STATE OF CONNECTICUT *v.* ANGEL C.*
(SC 15702)

STATE OF CONNECTICUT *v.* RANDY D.*
(SC 15703)

STATE OF CONNECTICUT *v.* JOSE C.*
(SC 15704)

STATE OF CONNECTICUT *v.* REGGIE BATTLES
(SC 15795)

Callahan, C. J., and Borden, Norcott, Katz and McDonald, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in these appeals are not disclosed. The records and papers of these cases shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Argued March 19—officially released June 23, 1998

*Lauren Weisfeld* and *Margaret P. Levy*, with whom, on the brief, were *Mary M. Haselkamp* and *Beth Merkin*, for the appellants (defendants).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *James E. Thomas*, state's attorney, and *Cecilia Wiederhold* and *John F. Fahey*, assistant state's attorneys, for the appellee (state).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is the constitutionality of General Statutes § 46b-127 (a),[1] which amended the Juvenile Justice Act; General Statutes § 46b-120 et seq.; by mandating an automatic transfer to the regular criminal docket of the Superior Court (criminal docket or court) for any individual who has attained the age of fourteen years and is charged with certain enumerated offenses. Pursuant to § 46b-127 (a), automatic transfer of a child to the criminal docket is mandatory if the child is charged with having committed a capital, class A or class B felony,[2] or arson murder

---

[1] General Statutes § 46b-127 (a) provides: "The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the Superior Court the case of any child charged with the commission of a capital felony, a class A or B felony or a violation of section 53a-54d [arson murder], provided such offense was committed after such child attained the age of fourteen years. The child shall be arraigned in the regular criminal docket of the Superior Court at the next court date following such transfer. The file of any case so transferred shall remain sealed until the tenth day following such arraignment unless the state's attorney has filed a motion pursuant to this subsection in which case such file shall remain sealed until the court makes a decision on the motion. A state's attorney may, not later than ten working days after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony to the docket for juvenile matters for disposition in accordance with the provisions of this chapter. The court sitting for the regular criminal docket shall, after hearing and not later than ten working days after the filing of such motion, decide such motion."

[2] General Statutes § 53a-25 provides: "(a) An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony.

"(b) Felonies are classified for the purposes of sentence as follows: (1)

as defined by General Statutes § 53a-54d,[3] after he or she has attained the age of fourteen years. The court is precluded from exercising any discretion in the transfer process. Additionally, § 46b-127 (a) provides that the prosecutor may, within ten days after the automatic transfer to the criminal docket, present a motion to the court requesting that a juvenile charged with a class B felony be retransferred to the docket for juvenile matters (juvenile docket).

This appeal arises out of four consolidated cases, each challenging the constitutionality of § 46b-127 (a). The underlying relevant facts are not disputed by the defendants. On October 29, 1995, three assailants accosted and attempted to rob a pedestrian in the area of York Street in New Haven. The three assailants, one of whom was wearing a mask, surrounded the victim, demanded cash and attempted to search the victim. One of the assailants claimed to have a gun and threatened to use it if the victim did not comply with their demand. The victim escaped unscathed, however, and called the police. Soon after, the three perpetrators accosted another victim. Using the same method, they obtained $17. Soon thereafter, the defendants Randy D., Angel C. and Jose C., each of whom was fourteen years of age, were apprehended in the vicinity. The police found a mask and $17 in their possession, but no gun.

Class A, (2) class B, (3) class C, (4) class D, (5) unclassified and (6) capital felonies.

"(c) The particular classification of each felony defined in this chapter is expressly designated in the section defining it. Any offense defined in any other section of the general statutes which, by virtue of an expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified felony."

[3] General Statutes § 53a-54d provides: "A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

The defendants were arrested and charged with first degree robbery in violation of General Statutes § 53a-134, a class B felony, as well as conspiracy and attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-48, 53a-49 and 53a-134.[4] Pursuant to the provisions of the newly enacted § 46b-127 (a), the defendants were automatically transferred to the criminal docket. They filed a motion to dismiss their transfers,[5] alleging that § 46b-127 (a) is unconstitutional because it did not afford them notice of the pending transfer or an opportunity for a hearing and the assistance of counsel prior to the transfer. They also sought an articulation by the prosecutor regarding his reason for not transferring their case back to the juvenile

[4] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . .

"(b) Robbery in the first degree is a class B felony . . . ."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[5] Pursuant to Practice Book (1998 Rev.) § 41-8 (4), formerly § 815 (4), the defendants' objection to the "[a]bsence of jurisdiction of the court over the defendant or the subject matter" was appropriately raised by a motion to dismiss. If § 46b-127 (a) were unconstitutional and the transfers were therefore invalid, the criminal court would lack jurisdiction.

docket. The trial court denied both motions, concluding that the statute was not unconstitutional and that an articulation by the prosecution was not required. The three defendants then entered conditional pleas of nolo contendere to youthful offender status,[6] based on an underlying charge of conspiracy to commit robbery in the second degree. When the defendants entered their pleas, they preserved the right to appeal the denial of their motions to dismiss.[7] The defendants were sentenced to suspended terms of incarceration ranging from two to five years and three years probation.

The defendant Reggie Battles,[8] also fourteen years of age, was identified by the victim as one of five participants in the sexual assault of a young woman on May

[6] Chapter 960a of the General Statutes contains the provisions relating to youthful offender status and the benefits attendant thereto. General Statutes § 54-76b provides: "For the purpose of sections 54-76b to 54-76n, inclusive, 'youth' means a minor who has reached the age of sixteen years but has not reached the age of eighteen years or a child who has been transferred to the regular criminal docket pursuant to section 46b-127; and 'youthful offender' means a youth who is charged with the commission of a crime which is not a class A felony or a violation of subdivision (2) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, [all relating to various types of sexual assault] who has not previously been convicted of a felony or been previously adjudged a serious juvenile offender or serious juvenile repeat offender, as defined in section 46b-120, or a youthful offender, or been afforded a pretrial program for accelerated rehabilitation under section 54-56e, and who is adjudged a youthful offender pursuant to the provisions of said sections. The Interstate Compact on Juveniles, except the provisions of article four thereof, shall apply to youthful offenders to the same extent as to minors below sixteen years of age."

[7] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[8] The defendant was denied youthful offender status, which would have preserved his anonymity, because he was charged with a crime that consti-

18, 1996, in Hartford. He was arrested and charged with the class A felonies of first degree kidnapping in violation of General Statutes § 53a-92[9] and conspiracy to commit first degree kidnapping in violation of General Statutes §§ 53a-48 and 53a-92. He also was charged with the class B felonies of first degree sexual assault in violation of General Statutes § 53a-70[10] and conspiracy and attempt to commit first degree sexual assault in violation of General Statutes §§ 53a-48, 53a-49 and 53a-70, and with the class A misdemeanor of assault in the third degree in violation of General Statutes § 53a-61. His case was automatically transferred to the criminal docket where he moved for dismissal, asserting that the transfer was unconstitutional. His motion was denied,[11] and the state filed a substitute information charging him with the crimes of kidnapping in the first degree, sexual assault in the first degree and conspiracy to

tutes a class A felony. See General Statutes §§ 54-76b and 54-76*l*; *State* v. *Matos*, 240 Conn. 743, 754–55, 694 A.2d 775 (1997).

[9] General Statutes § 53a-92 provides: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and: (1) His intent is to compel a third person (A) to pay or deliver money or property as ransom or (B) to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function.

"(b) Kidnapping in the first degree is a class A felony."

[10] General Statutes § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present.

"(b) Sexual assault in the first degree is a class B felony . . . ."

[11] The trial court relied on the memoranda of decision issued by the trial court in the cases of Jose C., CR [9]6-421185, and Angel [C.], CR 96-159081, and incorporated their rationales, in concluding that the statute was not unconstitutional.

commit sexual assault in the first degree. Subsequently, Battles entered a conditional plea of nolo contendere to third degree burglary in violation of General Statutes § 53a-103, first degree unlawful restraint in violation of General Statutes § 53a-95 and fourth degree sexual assault in violation of General Statutes § 53a-73a,[12] preserving the right to appeal the denial of his motion to dismiss. General Statutes § 54-94a; see footnote 7 of this opinion. Battles was sentenced to eight years imprisonment, execution suspended after two years, and five years probation.

The four defendants appealed from the judgments of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to Practice Book § 4023, now Practice Book (1998 Rev.) § 65-1, and General Statutes § 51-199 (c).[13] The defendants claim that § 46b-127 (a) violates both the state and federal constitutions in that: (1) it denies them procedural due process by depriving them of a vested liberty interest in

[12] General Statutes § 53a-103 provides: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a class D felony."

General Statutes § 53a-95 provides: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

General Statutes § 53a-73a provides in relevant part: "(a) A person is guilty of sexual assault in the fourth degree when . . . (2) such person subjects another person to sexual contact without such other person's consent . . . .

"(b) Sexual assault in the fourth degree is a class A misdemeanor."

[13] We granted the motions of the defendants Angel C., Jose C. and Randy D. to consolidate their appeals and transfer them to this court from the Appellate Court. We also granted Battles' motion to consolidate his appeal with and join in the briefs of Angel C., Jose C. and Randy D. Although certain of the issues pertaining to prosecutorial discretion regarding juveniles charged with class B felonies would not be applicable to the count of the substitute information charging Battles with kidnapping in the first degree, a class A felony, reference is made to "the defendants" collectively throughout this opinion, unless specification is necessary for the sake of clarity.

their status as juveniles without notice, a hearing or the assistance of counsel; (2) it denies them substantive due process by failing to provide for a probable cause hearing prior to their transfer to the criminal docket; (3) it denies them the equal protection of the laws; and (4) it violates the separation of powers provision of article second of the state constitution because the prosecutor's discretion to determine which juveniles charged with class B felonies should be tried as adults is without standards or the opportunity for judicial review. The defendants claim that this infringes upon an exclusive function of the judiciary, to wit, the right to control the court's docket. We do not agree with any of the defendants' claims.

We begin our analysis by noting that the defendants face a difficult task in seeking to prove that § 46b-127 (a) is unconstitutional. It is firmly established that " 'legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt.' "[14] *Chotkowski* v. *State*, 240 Conn. 246, 257–58, 690 A.2d 368 (1997); *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors,*

---

[14] The defendants request that we abandon this standard because it unfairly precludes a conclusion of unconstitutionality by clear and convincing evidence. They cite no compelling reason why the court should retreat from this long-standing precedent, and we decline to do so. The strong presumption of the constitutional validity of a statute is an integral aspect of our jurisprudence, and its elimination or dilution would seriously undermine the foundation of our precedents. Furthermore, the notion of "proving" a statute unconstitutional beyond a reasonable doubt, although phrased in terms appropriate to "proof" of *facts*, is a misnomer when applied to the appellate function of determining whether a statute is constitutional. That function involves a quintessential question of law, and is not accurately described in terms appropriate to questions of fact. Thus understood, the standard is really another way of expressing the notion that respect for separation of powers counsels that a court be very cautious about declaring a statute unconstitutional.

*Inc.*, 239 Conn. 708, 754, 687 A.2d 506 (1997); *State* v. *Floyd*, 217 Conn. 73, 79, 584 A.2d 1157 (1991); *State* v. *Dupree*, 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985). Bearing this admonition in mind, we turn to the defendants' substantive claims.

I

The defendants first argue that they have a liberty interest in their status as juveniles and the special benefits that such status entails. They further argue that their automatic transfer to the criminal docket violates their right to procedural due process, namely the right to notice of the pending transfer, an opportunity for a hearing and the right to the assistance of counsel at the hearing prior to the transfer. In the defendants' view, whenever a state has created a juvenile court system and permits transfers from the juvenile court to the criminal court, a juvenile must be accorded those minimal protections prior to the transfer. We do not agree.

There is no dispute that adjudication as a juvenile rather than prosecution as an adult carries significant benefits, chief among which are a determination of delinquency rather than criminality; General Statutes § 46b-121; confidentiality; General Statutes § 46b-124; limitations with respect to sentencing; General Statutes § 46b-140; erasure of files; General Statutes § 46b-146; and isolation from the adult criminal population. General Statutes § 46b-133; see also *In re Tyvonne M.*, 211 Conn. 151, 158–61, 558 A.2d 661 (1989). Accordingly, we assume without deciding that a juvenile *in whom a liberty interest in his or her juvenile status has vested*, has a substantial liberty interest in the continuation of that juvenile status and that the juvenile cannot and should not be deprived of that status without the procedural protections claimed by the defendants. The

determinative question, therefore, is whether these defendants had a liberty interest in their juvenile status prior to their automatic transfer to the criminal docket. We conclude that they did not.

The requirements for a successful due process claim are well established. "The fourteenth amendment to the United States constitution provides that the State [shall not] deprive any person of life, liberty, or property, without due process of law . . . . In order to prevail on his due process claim, the [defendant] must prove that: (1) he has been deprived of a property [or *liberty] interest cognizable under the due process clause*; and (2) the deprivation of the property [or liberty] interest has occurred without due process of law. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Matos*, 240 Conn. 743, 749, 694 A.2d 775 (1997); see *State* v. *Morales*, 240 Conn. 727, 739, 694 A.2d 758 (1997). As a threshold matter, therefore, the defendants must show that they have a vested liberty interest in their juvenile status that is cognizable under the due process clause. *Frillici* v. *Westport*, 231 Conn. 418, 437–38, 650 A.2d 557 (1994). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States. *Meachum* v. *Fano*, 427 U.S. 215, 223-227 [96 S. Ct. 2532, 49 L. Ed. 2d 451] (1976). *Hewitt* v. *Helms*, 459 U.S. 460, 466, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)." (Internal quotation marks omitted.) *State* v. *Matos*, supra, 749.

As they must, the defendants concede that their liberty interest in juvenile status does not emanate directly from the state or federal constitutions. "Any [special treatment] accorded to a juvenile because of his [or her] age with respect to proceedings relative to a criminal offense *results from statutory authority, rather than from any inherent or constitutional right. . . .* Because the right to [special treatment] emanates from

the legislature and does not involve any fundamental right, *that right can be withdrawn or limited to certain classes of juvenile offenders by the legislature provided the classifications are founded upon a rational basis.* . . . In exercising [the state's] police power the legislature has a broad discretion, both in determining what the public welfare requires, and in fashioning legislation to meet that need." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 755; *State* v. *Anonymous*, 173 Conn. 414, 417–18, 378 A.2d 528 (1977).

The basis of the defendants' argument is their assertion that the Juvenile Justice Act itself has created and vested them with a liberty interest in juvenile status. "[O]nce a state provides its citizens with certain statutory rights beyond those secured by the constitution itself, the constitution forbids the state from depriving individuals of those statutory rights without due process of law." (Internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 749. In this regard, the defendants' argument is twofold.

First, they assert that § 46b-127 (a) vests the juvenile court with original and exclusive jurisdiction over juveniles who are fourteen years of age or older and charged with any of the enumerated offenses. Consequently, they argue, this creates a liberty interest in juvenile status that vests prior to the automatic transfer. Second, the defendants argue that § 46b-127 (a) does not mandate that all juveniles meeting the statutory criteria be tried as adults. Rather, they contend that because prosecutors have discretion to recommend the transfer of juveniles charged with class B felonies from the criminal docket to the juvenile docket, some juveniles coming within the purview of § 46b-127 (a) may be tried as adults, while others may be tried as juveniles. In their view, the possibility that some juveniles who meet the statutory criteria may be adjudicated as juveniles

defeats the conclusion that the statute is a mandatory, automatic transfer statute.

The state argues, however, that defendants who are fourteen or over and are charged with one of the enumerated offenses never have a liberty interest in juvenile status because the statute, which is the sole source of any such right, denies that status ab initio. By mandating that juveniles who meet the statutory criteria automatically be transferred to the criminal docket, the legislature has defined which juveniles are excluded from eligibility for juvenile status. In light of this, the state denies that either the vesting of original jurisdiction in the juvenile court or the discretionary authority of prosecutors with respect to juveniles charged with class B felonies creates a vested liberty interest in juvenile status. Even if jurisdiction does originate in the juvenile court, the state argues, this alone is insufficient to create a liberty interest when the statute expressly denies the right to the continuation of such jurisdiction or the exercise of any substantive adjudication by the juvenile court. The state asserts, moreover, that the existence of discretion creates nothing more than the possibility of the future vesting of juvenile status in certain of these offenders, which is not adequate to create a liberty interest. We agree with the state.

The defendants rely heavily upon *Kent* v. *United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966), arguing that it mandates a hearing prior to any transfer of a juvenile to the criminal docket. We conclude, however, that the defendants misinterpret the scope of *Kent*. *Kent* simply stands for the proposition that if a statute vests a juvenile with the right to juvenile status, then that right constitutes a liberty interest, of which the juvenile may not be deprived without due process, i.e., notice and a hearing.[15] Id., 556–58. If the

---

[15] The statute at issue in *Kent* required that waiver by the court be made only after "full investigation." *Kent* v. *United States*, supra, 383 U.S. 558.

statute at issue does not create a liberty interest, *Kent* is inapposite.

The statutory scheme in *Kent* was far different from that of Connecticut. In *Kent*, the statute vested "original and exclusive jurisdiction" in the juvenile court; id., 556; and permitted the juvenile court to waive jurisdiction *only* after "full investigation."[16] Id., 558. The court noted that the "Juvenile Court Act confers upon the child a right to avail himself of that court's exclusive jurisdiction. . . . [I]t is implicit in [the juvenile court] scheme that non-criminal treatment is to be the rule— and the adult criminal treatment, the exception which must be governed by the particular factors of individual cases." (Internal quotation marks omitted.) Id., 560–61.

The United States Supreme Court concluded that such a requirement was tantamount to a statutory mandate that a hearing be provided before a transfer could occur. Id., 561. The court declined the invitation to conclude that the full repertoire of due process rights applicable in the criminal adjudication of adults was necessary in a juvenile proceedings because it concluded that the statutory requirements were sufficient to address the question of whether a hearing was required. Id., 556. The court, in deciding that a hearing was required, concluded that "[w]e believe that this result is required by the statute read in context of constitutional principles relating to due process and the assistance of counsel." Id., 557.

This language has caused jurists and academicians to struggle with the appropriate interpretation of *Kent*. See, e.g., *Woodard* v. *Wainwright*, 556 F.2d 781, 783–84 (5th Cir. 1977), cert. denied, 434 U.S. 1088, 98 S. Ct. 1285, 55 L. Ed. 2d 794 (1978). Narrowly construed, *Kent* requires a hearing only if the applicable statute requires a hearing because due process requires the court to comply with the statutory mandate. A broader view of the opinion may be that federal due process requires that whenever an individual is given a statutory right to juvenile status, that right may not be divested by a transfer to the criminal court without a prior hearing. It is unnecessary to resolve this issue in light of our conclusion that, even under the broadest interpretation, *Kent* is inapplicable to this case because § 46b-127 (a) precludes vesting of any liberty interest in juveniles who are at least fourteen years old and charged with an enumerated offense.

[16] The court was reviewing the District of Columbia statutes, D.C. Code Ann. § 11-914 (1961), which permitted the juvenile court to waive its exclusive jurisdiction over a juvenile over the age of sixteen, thus enabling prosecution as an adult. *Kent* v. *United States*, supra, 383 U.S. 547–48.

It went on to conclude that by placing jurisdiction over all juveniles initially, and presumptively permanently, in the juvenile court, and permitting the court to waive its jurisdiction only after a full investigation, the statute created a substantial and vested liberty interest in juvenile status. Id., 561. That liberty interest could be divested by means of transfer to the criminal docket, but only after the requirements of procedural due process were met. Id.

Conversely, § 46b-127 (a) does not provide for exclusive jurisdiction in the juvenile court or a waiver of that jurisdiction by the court.[17] A juvenile who has reached the age of fourteen and is charged with one or more of the enumerated offenses has no right to avail himself of juvenile court jurisdiction because the statute *expressly precludes* the exercise of jurisdiction by the juvenile court, unless and until the criminal court has transferred the case from the criminal to the juvenile docket, which may occur only in the case of juveniles charged with class B felonies who have been recommended for transfer from the criminal docket to the juvenile docket. Moreover, it is implicit in § 46b-127 (a), unlike the statute in *Kent*, that adult treatment is the rule for such juveniles and that juvenile treatment is a narrow exception. The applicability of *Kent* cannot be expanded, therefore, beyond the scope of discretionary transfer statutes to mandatory transfer statutes. Section

[17] Connecticut has a unified court system. All criminal and civil matters fall within the subject matter jurisdiction of the Superior Court. Consequently, we have concluded that the issue of juvenile "jurisdiction" is not a question of subject matter jurisdiction, but rather more a question of venue. *State* v. *Kelley*, 206 Conn. 323, 331–32, 537 A.2d 483 (1988). This is unlike other states where there is a transfer of actual jurisdiction between independent courts. We refer to the concept of the rights that arise upon the commitment of a case to the juvenile docket in terms of jurisdiction vesting in the juvenile court for the sake of convenience in comparing our conclusion to that of other jurisdictions because the concept of venue is inadequate to make this comparison. This should not be viewed, however, in any way as a retreat from our conclusion or rationale in *Kelley*.

46b-127 (a) is a mandatory, not discretionary, transfer statute. It is an automatic, mandatory transfer statute with the transfer based exclusively on the age of the defendant and the offense charged. The existence of discretion in the prosecutor to recommend transfer of certain individuals back to the juvenile docket does not undermine the conclusion that the initial transfer to the criminal docket is not a discretionary transfer. We conclude, therefore, that *Kent* does not require the conclusion that § 46b-127 (a) violates the defendants' rights to due process.

The defendants contend, however, that § 46b-127 (a) is unlike any other statutory scheme requiring automatic transfer because it appears to vest some type of initial jurisdiction in the juvenile court and then divests the juvenile court of jurisdiction over a juvenile who is charged with one or more of the enumerated offenses. They contend, therefore, that reliance on decisions in other jurisdictions is not persuasive. The defendants point to the fact that a juvenile is brought initially to a juvenile detention facility,[18] and that petitions for the transfer to the criminal docket are prepared in the juvenile court by a juvenile prosecutor and are signed by the juvenile court judge or clerk. They argue that this procedural activity initiates a prosecution in the juvenile court and, therefore, original jurisdiction vests in

---

[18] We find the fact that the juvenile is taken to juvenile detention when first arrested to be of little moment, because this is a right mandated by a separate statutory provision for *any* individual under the age of sixteen, irrespective of the crime charged, and the juvenile is not deprived of this right pursuant to § 46b-127 (a). See General Statutes § 46b-127 (c); footnote 32 of this opinion. By statute, all juveniles are to be taken to a juvenile detention facility and, if they are to be maintained in custody, they must remain in a juvenile facility during their trial until the earlier of their sixteenth birthday or after sentencing upon conviction as an adult. The defendants assert that some, indeed most, juveniles are actually sent to adult criminal detention facilities pending trial. The record does not substantiate that assertion and, if it is correct, it appears to occur in direct contravention of the law.

the juvenile court, creating a vested liberty interest in juvenile status, of which they may not be divested without a due process hearing. The defendants concede, however, that if this initial processing did not occur in the juvenile court, no due process hearing would be necessary.

The state maintains, and the defendants concede, that this initiation of proceedings in the juvenile court is exclusively for administrative purposes and that nothing substantive occurs or can occur while the case is temporarily on the juvenile docket. The state argues, consequently, that the administrative processing of paperwork is insufficient to create a right to juvenile status in the face of the statute that specifically denies the right to juvenile status. We agree.

In reaching this conclusion we join the overwhelming majority of courts that have addressed this issue. A review of state and federal decisions reveals that statutes providing, under stated circumstances, for mandatory adult adjudication of offenders of otherwise juvenile age, routinely have been upheld against due process challenges based on *Kent*. See, e.g., *Woodard* v. *Wainwright*, 556 F.2d 781, 783–84 (5th Cir. 1977), cert. denied, 434 U.S. 1088, 98 S. Ct. 1285, 55 L. Ed. 2d 794 (1978); *United States* v. *Bland*, 472 F.2d 1329, 1336–37 n.26 (D.C. Cir. 1972); *People* v. *Thorpe*, 641 P.2d 935, 939–40 (Colo. 1982); *Lane* v. *Jones*, 244 Ga. 17, 19, 257 S.E.2d 525 (1979); *People* v. *P.H.*, 145 Ill. 2d 209, 235–36, 582 N.E.2d 700 (1991); *State* v. *Perique*, 439 So. 2d 1060, 1063–64 (La. 1983); *In the Matter of Wood*, 236 Mont. 118, 121–22, 768 P.2d 1370 (1989); *Vega* v. *Bell*, 47 N.Y.2d 543, 550–51, 393 N.E.2d 450, 419 N.Y.S.2d 454 (1979); *Jones* v. *State*, 654 P.2d 1080, 1084 nn.2 & 3 (Okla. Crim. 1982); *Jahnke* v. *State*, 692 P.2d 911, 927–29 (Wyo. 1984).

The seminal case addressing the constitutionality of automatic, mandatory adult adjudication statutes for

certain classes of juveniles is *United States* v. *Bland,* supra, 472 F.2d 1329. The relevant statute in *Bland* excluded from the definition of "child" any individual who was at least sixteen years old and charged with certain enumerated offenses, thus precluding any juvenile court jurisdiction over such individuals. Id., 1335. The court in *Bland* distinguished *Kent,* noting that "[the defendant's] attempt to equate the United States Attorney's decision in the case at bar with the transfer of an individual from the jurisdiction of the juvenile court to that of adult court is unavailing. In contrast to such a situation, the case at bar involves no initial juvenile court jurisdiction; the United States Attorney's decision to charge an individual sixteen years of age or older with certain enumerated offenses operates automatically to exclude that individual from the jurisdiction of the Family Division." Id., 1336 n.26. The defendants would have us read into these statements from *Bland* the implication that a liberty interest is created if there is any contact of the matter with the juvenile court, even if that contact is temporary and for only a limited, procedural purpose. A review of cases addressing automatic, mandatory transfer statutes convinces us that *Bland* is not to be so interpreted.[19]

---

[19] Our research reveals numerous states mandate criminal prosecution of certain youths, usually based on age and the severity of the offense charged, without providing a pretransfer hearing. The mechanism by which these statutes accomplish this may vary, but the effect is the same. Most jurisdictions define the jurisdiction of their juvenile courts to exclude certain juveniles, as in *Bland.* Other statutes, like § 46b-127 (a), call for mandatory transfer after the age and offense charged have been determined.

Statutes following the former approach include: Del. Code Ann. tit. 10 § 921 (2) (1996 Cum. Sup.) (no juvenile jurisdiction if criteria met); D.C. Code Ann. § 16-2301 (3) (1997) (not "child" if criteria met; juvenile jurisdiction only over "child"); Ga. Code Ann. § 15-11-5 (1997 Sup.) (granting exclusive criminal court jurisdiction when statutory criteria met; judicial and prosecutorial discretion to transfer to juvenile court); Idaho Code § 20-509 (1997) (mandatory adult treatment if criteria met); Ind. Code Ann. § 31-6-2-1 (d) (Michie 1987) (no juvenile jurisdiction over certain cases); Kan. Stat. Ann. §§ 38-1602 (b) and 38-1604 (1994) (not "juvenile offender" if criteria met; juvenile jurisdiction only for "juvenile offender"); Nev. Rev. Stat. § 62-040

The United States Court of Appeals for the Fifth Circuit rejected a constitutional challenge to Florida's automatic juvenile transfer statute raising the same due process divestiture of jurisdiction argument that the defendants present. *Woodard* v. *Wainwright,* supra, 556 F.2d 781 (habeas action). The Florida statute expressly vested jurisdiction over all juvenile defendants initially in the juvenile court and automatically divested that court of jurisdiction upon the indictment of the juvenile defendants for certain enumerated offenses.[20] Id., 783. The Fifth Circuit concluded that *Kent* was inapplicable because the juveniles transferred under the Florida stat-

(2) (1997) (no juvenile jurisdiction if criteria met); Okla. Stat. Ann. tit. 10, § 7306-1.1 (West 1998) ("shall be considered as an adult" if criteria met); 42 Pa. Const. Stat. § 6355 (e) (1982) (mandatory criminal jurisdiction if criteria met); Utah Code Ann. § 78-3a-601 (1996) (exclusive criminal court jurisdiction if criteria met); Wis. Stat. § 938.183 (1997 Sup.) (exclusive criminal jurisdiction if criteria met).

Statutes following the latter approach include: Colo. Rev. Stat. §§ 19-2-104 and 19-2-517 (1997 Cum. Sup.) (automatically divests juvenile jurisdiction if prosecutor also brings charges in criminal court); Fla. Stat. Ann. § 985.225 (West 1998 Cum. Sup.) (automatically divests juvenile jurisdiction if indictment for certain offenses); 705 Ill. Comp. Stat. Ann. § 405/5-4 (3.1) and (3.2) (West 1992) (mandatory transfer if statutory criteria met); La. Rev. Stat. Ann. § 13:1570 (A) (5) (West 1983) (divesting juvenile jurisdiction if statutory criteria met); N.Y. Penal Law § 30.00 (2) (McKinney 1998) (mandating criminal responsibility for certain offenses; prosecutorial discretion to recommend transfer to juvenile court).

Contrary to the defendants' assertions, several jurisdictions, including, for example, Illinois, Florida, and Louisiana, vest jurisdiction in the juvenile court and subsequently divest that jurisdiction upon a determination of adequate age and upon the charging of the defendant with an enumerated offense. Many statutes, such as those of New York and Georgia, also include provisions permitting the prosecutor to recommend transfer to the juvenile court.

[20] The Florida statute, § 39.02 (5), specifically provided at that time: " 'A child of any age charged with a violation of Florida law punishable by death or by life imprisonment shall be subject to the jurisdiction of the [juvenile] court as set out in § 39.06 (7) unless and until an indictment on such charge is returned by the grand jury, in which event and at which time the court *shall be divested of jurisdiction under this statute and the charge shall be made and the child shall be handled in every respect as if he were an adult.* . . .' " (Emphasis added.) *Woodard* v. *Wainwright,* supra, 556 F.2d 782 n.1.

ute had no liberty interest in juvenile status and, therefore, the statute did not violate their right to due process. Id., 783–84. In so concluding, the court specifically rejected the argument that the initial vesting of jurisdiction in the juvenile court created a liberty interest because "we do not believe that petitioners have ever been 'given' the right to juvenile treatment in any realistic sense. They argue that Section 39.02 (1), vesting exclusive original jurisdiction in the Juvenile Division of 'proceedings in which a child is alleged to be . . . delinquent' gives them an absolute right to juvenile treatment, which then cannot be divested without a hearing. The entire statute, however, must be read as a whole, and express limitations of jurisdiction are contained in Sections 39.02 (5) (a), (b) and (c). Therefore, the statute clearly limits jurisdiction from the start. It is true that these same petitioners might have been treated as juveniles in previous encounters with the law, but everyone outgrows juvenile treatment sooner or later; these petitioners, through acts alleged or admitted, have just outgrown it sooner." Id., 785. The court specifically concluded that "Section 39.02 (5) (c), Florida Statutes, *divesting the juvenile court of jurisdiction* over offenders indicted by a grand jury for crimes punishable by death or life imprisonment, *is not unconstitutional in failing to require a hearing before a juvenile can be tried as an adult.*" (Emphasis added.) Id., 787.

Additionally, the Louisiana Supreme Court specifically addressed and rejected the defendants' argument in upholding its juvenile transfer statute in *State* v. *Perique*, supra, 439 So. 2d 1060. The court recognized that "until a bill of information is filed or a grand jury indictment [is] returned against a juvenile, he is subject to juvenile rather than adult procedures."[21] Id., 1063. It

---

[21] The Louisiana "transfer" statute denied exclusive juvenile court jurisdiction over juveniles fifteen years of age or older and charged with certain

was unpersuaded, however, by the defendant's reliance on this fact to allege, as the defendants allege here, that the juvenile court thus has original jurisdiction, creating a liberty interest in juvenile status of which they may not be deprived without a hearing based on *Kent.* Id., 1063–64. The Louisiana court found its situation "easily distinguishable" from *Kent* and concluded that "[i]n this case, there are no statutory rights of which defendants are being deprived. Once a sixteen-year-old is charged with armed robbery, the question is not one of 'transfer' of jurisdiction. Rather, the juvenile court is automatically divested of jurisdiction. This divestiture is not a matter of discretion on the part of the juvenile court or the district attorney, but is controlled by the statute defining the jurisdiction of the juvenile courts . . . ." (Citation omitted.) Id., 1064.[22]

We find the rationale of these courts to be persuasive. Although the statutes surveyed may differ in some respects from § 46b-127 (a), they are similar inasmuch as they provide that initial procedures commence in the juvenile court, but adult criminal prosecution is mandated on the basis of the juvenile's age and the offense charged, thus automatically divesting the juvenile court of jurisdiction.[23] Therefore, despite the fact that the jurisdiction of the juvenile court attaches in

offenses. La. Rev. Stat. Ann. § 13:1570 (West 1980); *State* v. *Perique,* supra, 439 So. 2d 1061 n.1. The court, however, previously had held that juveniles were subject to juvenile court jurisdiction until an indictment was returned or the bill of information was filed. Id., 1063.

[22] In addition to these decisions, other courts have upheld transfer statutes that divest jurisdiction without expressly referring to that issue of divestiture of jurisdiction. See, e.g., Mont. Code Ann. § 41-5-206 (3) (1989), upheld against constitutional attacks by *In the Matter of Wood,* supra, 236 Mont. 118; Ill. Comp. Stat. c. 37, para. 805-4 (3.1) (1989) (now 705 Ill. Comp. Stat. Ann. § 405/5-4 [3.1] [West 1992]), upheld against constitutional challenges by *People* v. *P.H.,* supra, 145 Ill. 2d 209.

[23] We rely on *Perique* and *Woodard* solely for the analysis therein regarding the constitutionality of the divestiture of juvenile status.

some nominal sense for the purpose of conducting limited administrative procedures, there is no meaningful attachment of any substantive right to juvenile status or its attendant benefits. Read as a whole, the Juvenile Justice Act; General Statutes § 46b-120 et seq.; clearly denies the juvenile court jurisdiction over any juvenile who is fourteen years of age or older and charged with any of the offenses enumerated in § 46b-127 (a).[24] It also prohibits the juvenile court from participating in any meaningful manner with respect to the transfer of those individuals at the time of the automatic transfer. We have found no case, and the defendants have directed our attention to none,[25] in which a statute similar to § 46b-127 (a) was found to have created a liberty interest in juvenile status merely by the existence of contact with the juvenile court for procedural purposes.

The defendants argue, secondarily, that the due process violation is "exacerbate[d]" by the fact that "unreviewable prosecutorial discretion clearly increases the

---

[24] As previously noted, the juvenile court may later obtain jurisdiction over juveniles charged with class B felonies if the criminal court grants the discretionary motion of the prosecutor to transfer a juvenile charged with a class B felony to the juvenile docket.

[25] The defendants' reliance on *Hughes* v. *State*, 653 A.2d 241 (Del. 1994), declaring an amendment to Delaware's transfer statute unconstitutional, is misplaced. The Delaware amendment provided that a juvenile whose case was pending adjudication in juvenile court was required to be transferred automatically to the criminal court on reaching his or her eighteenth birthday. Id., 247. Previously, the statute had required a hearing to determine whether the juvenile in question was better served by remaining in the juvenile court. Id., 248. The statute struck down in *Hughes* did not mandate that divesture be immediate upon charging the defendant, but that it might occur sometime during the pendency of the case if the defendant reached eighteen years of age prior to final adjudication. Consequently, for some meaningful period of time prior to transfer, the juvenile was permitted to enjoy the benefits of juvenile status. Moreover, the juvenile court exercised exclusive jurisdiction over substantive matters relating to the adjudication. The provisions of the Delaware statute are not similar to § 46b-127 (a), in which the mandate of criminal adjudication occurs immediately upon charging before any substantive matters are adjudicated.

risk that the wrong children will be prosecuted as adults." According to the defendants' argument, the deprivation of juvenile status may occur only in "clearly circumscribed situations"; *State* v. *Torres*, 206 Conn. 346, 360, 538 A.2d 185 (1988); and the absence of standards in § 46b-127 (a) to control the prosecutor's discretion whether to transfer certain juveniles from the criminal court to the juvenile court, coupled with the absence of a right to judicial review of that decision, run afoul of this requirement. Disregarding, for the moment, the defendants' mischaracterization of the scope of prosecutorial discretion,[26] we are not persuaded that the absence of specific standards relating to the exercise of a prosecutor's discretion to transfer certain juveniles

---

[26] Prosecutorial discretion under § 46b-127 (a) with respect to recommending the transfer of certain juveniles to the juvenile docket is neither unfettered nor exclusive. "An attorney as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him." (Internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554–55, 663 A.2d 317 (1995); *In re Peck*, 88 Conn. 447, 450, 91 A. 274 (1914); see *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 524, 461 A.2d 938 (1983). Prosecutors, as attorneys, are constrained by the duties of public office and as officers of the court to act according to law and in the interest of justice. *Massameno* v. *Statewide Grievance Committee*, supra, 574. Any defendant who has reason to believe that the prosecuting authority has abused its discretion may bring a motion to the court seeking dismissal of the charge. See General Statutes § 54-56 set forth in footnote 31 of this opinion; Practice Book (1998 Rev.) § 41-8, formerly § 815. "[T]he purpose of the law [§ 54-56] and the philosophy [behind] it was to prevent unchecked power by a prosecuting attorney." (Internal quotation marks omitted.) *State* v. *Corchado*, 200 Conn. 453, 460, 512 A.2d 183 (1986); *State* v. *Bellamy*, 4 Conn. App. 520, 527, 495 A.2d 724 (1985).

Furthermore, the prosecutor never acts alone in deciding that a juvenile should be transferred to the criminal docket or, thereafter, whether any matter should be transferred to the juvenile docket. The legislature, through the application of § 46b-127 (a), determines which juveniles are to be placed on the criminal docket, not the prosecutor. The prosecutor recommends removal, but the recommendation must be approved by the court before a juvenile may be removed to the juvenile docket. Consequently, we are not persuaded that prosecutors have the ability to exercise either unrestrained or exclusive discretion to affect the court's docket.

to the juvenile court renders § 46b-127 (a) constitutionally infirm.

Under federal law, the attorney general has the discretion to direct that any juvenile be prosecuted either as an adult or as a juvenile, and federal law does not provide standards to guide the exercise of discretion by the attorney general.[27] This discretion is significantly broader than that vested in prosecutors by § 46b-127 (a), which discretion is limited to recommending transfer to the juvenile court of certain juveniles who would otherwise be tried as adults. The federal courts consistently have concluded that the exercise of discretion by the attorney general "is a prosecutorial decision beyond the reach of the due process rights of counsel and a hearing." *Cox* v. *United States*, 473 F.2d 334, 335 (4th Cir.), cert. denied, 414 U.S. 869, 94 S. Ct. 183, 38 L. Ed. 2d 116 (1973); accord *United States* v. *Quinones*, 516 F.2d 1309, 1311 (1st Cir.), cert. denied, 423 U.S. 852, 96 S. Ct. 97, 46 L. Ed. 2d 76 (1975); see *Russell* v. *Parratt*, 543 F.2d 1214, 1216 (8th Cir. 1976) (interpreting Nebraska law permitting prosecutorial discretion to charge as either juvenile or adult). In *United States* v. *Bland*, supra, 472 F.2d 1337, the court concluded that "[w]e cannot accept the hitherto unaccepted argument that due process requires an adversary hearing before the prosecutor can exercise his age-old function of deciding what charge to bring against whom. Grave

---

[27] Under the Federal Youth Corrections Act; 18 U.S.C. § 5005 et seq. (1982); "a juvenile charged with a federal offense not punishable by death or life imprisonment shall be prosecuted as a juvenile delinquent, if he consents to that procedure and unless the Attorney General has expressly directed that he be prosecuted as an adult." *Cox* v. *United States*, 473 F.2d 334, 335 (4th Cir.), cert. denied, 414 U.S. 869, 94 S. Ct. 183, 38 L. Ed. 2d 116 (1973). The United States attorney seeks the consent of the attorney general, or her duly authorized appointee, to try the juvenile as an adult, and the juvenile is given neither notice nor a hearing prior to the time the attorney general, or her appointee, makes a decision with respect to the charge. See 18 U.S.C. § 5032 (1994).

consequences have always flowed from this, but never has a hearing been required."

There is a vast difference between the exercise of judicial discretion without a hearing and the exercise of executive, i.e., prosecutorial, discretion without a hearing. The former has been held to violate due process, while the latter has not. "Judicial proceedings must be clothed in the raiment of due process, while the processes of prosecutorial decision-making wear very different garb. It is one thing to hold, as we have, that when a state makes waiver of a juvenile court's jurisdiction a judicial function, the judge must cast about the defendant all of the trappings of due process, but it does not necessarily follow that a state or the United States may not constitutionally treat the basic question as a prosecutorial function . . . . [T]he character of the proceeding, rather than its consequences to the accused, are largely determinative of his rights. . . . [T]he guaranty of a hearing found in the due process clause of the Fifth [and Fourteenth] Amendment[s] has traditionally been limited to judicial and quasi-judicial proceedings. It has never been held applicable to the processes of prosecutorial decision-making." *Cox* v. *United States*, supra, 473 F.2d 336. Consequently, the prosecutor's right to exercise discretion in determining whether to recommend transfer to the juvenile docket does not violate the defendants' due process rights.[28]

Another fundamental flaw in the defendants' due process argument is the presumption that judicial review

[28] In addition to the federal cases noted, there are several state statutes that provide for prosecutorial discretion either to charge as an adult or as a juvenile, or to recommend a transfer from the criminal docket to the juvenile docket, that have been upheld against due process challenges. See, e.g., *People* v. *Thorpe*, supra, 641 P.2d 940; *Lane* v. *Jones*, supra, 244 Ga. 19; *State* v. *Grayer*, 191 Neb. 523, 525–26, 215 N.W.2d 859 (1974); *Vega* v. *Bell*, supra, 47 N.Y.2d 551; *Jones* v. *State*, supra, 654 P.2d 1082–83; *Jahnke* v. *State*, supra, 692 P.2d 927–29.

of a prosecutor's discretionary decision is essential or even desirable. We recently reiterated the principle that prosecutors are vested with broad, albeit not unlimited, discretion and that undue judicial interference in the exercise of their discretion is to be eschewed. "Prosecutors . . . have a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of the criminal law. . . . This broad discretion, which necessarily includes deciding which citizens should be prosecuted and for what charges they are to be held accountable . . . rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." (Citations omitted; internal quotation marks omitted.) *State* v. *Kinchen*, 243 Conn. 690, 699, 707 A.2d 1255 (1998). We have recognized that "the basis of prosecutorial charging decisions is one area not generally well suited for broad judicial oversight because it involve[s] exercises of judgment and discretion that are often difficult to articulate in a manner suitable for judicial evaluation. . . . The judicial branch . . . [is] not in the best position to consider the various factors that prosecutors weigh, such as the strength of the evidence, the visibility of the crime, the availability of resources and possible deterrent effects. Nor is the judicial branch anxious to consider the validity of various rationales advanced for particular charging decisions." (Citation omitted; internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 575, 663 A.2d 317 (1995). The various factors that go into the decision of whether to recommend transfer to the juvenile docket is as unique to the prosecutorial function as any other charging decision.

We are persuaded, therefore, that the lack of judicial review or express standards to guide the prosecutor's decision does not render § 46b-127 (a) constitutionally infirm. Because any juvenile that comes within the

ambit of § 46b-127 (a) is, in the judgment of the legislature, presumptively the "right" child to be tried as an adult, there is little danger that the "wrong" child will be tried as an adult. The fact that the juvenile in question, his or her advocate, or even the court, might believe that he or she is better suited to juvenile adjudication than to criminal prosecution is of little significance. If the defendants disagree with the legislative conclusion of which class of juveniles presumptively should be tried as adults, their remedy lies with the legislature, not this court.

Finally, the existence of prosecutorial discretion does nothing to further the determination of whether juveniles that come under the provisions of § 46b-127 (a) have a vested interest in their juvenile status. The fact that the prosecutor can recommend transfer of certain offenders from the criminal court to the juvenile docket does not create a liberty interest in juvenile status. In order for the defendants to succeed in their contention that state law creates a liberty interest in their status as juveniles they must show that the "state statute creates a right to treatment [as juveniles] or creates a justifiable expectation that such treatment will be afforded to [them]." *State* v. *Campbell*, 224 Conn. 168, 183, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993); *State* v. *Davis*, 190 Conn. 327, 340, 461 A.2d 947, cert. denied, 464 U.S. 938, 104 S. Ct. 350, 78 L. Ed. 2d 315 (1983). The mere fact that the prosecutor may exercise discretion to recommend transfer of certain juveniles to the juvenile docket does not create a justifiable expectation of juvenile status such that its inclusion in § 46b-127 (a) may be said to create a liberty interest.

We conclude that any individual who is fourteen years of age or older and charged with the commission of a capital or class A or B felony or arson murder cannot

meet the threshold due process requirement of demonstrating a cognizable liberty interest in juvenile status. The Juvenile Justice Act, which is the sole source of any liberty interest in juvenile status and the benefits attendant thereon, read as a whole, expressly excludes juveniles age fourteen and older charged with certain offenses from juvenile status, in the absence of subsequent, affirmative, discretionary action on the part of a prosecutor and the criminal court. We conclude that the lack of notice, a hearing and the assistance of counsel prior to the automatic transfer is not a violation of procedural due process because no process is due in the juvenile court prior to transfer.

## II

The defendants also argue that substantive due process requires that the juvenile court conduct a hearing prior to transfer to determine whether there is probable cause to believe that the juvenile committed the offense charged in order to prevent the harm that follows the loss of juvenile status. They argue that the absence of a mandatory probable cause hearing in the juvenile court renders § 46b-127 (a) constitutionally invalid. This argument founders upon the inaccuracy of its major premise, namely, that these defendants have a substantive liberty interest in their juvenile status that is in danger of being lost without a probable cause hearing. As we concluded in part I of this opinion, a juvenile who is at least fourteen years of age and charged with certain offenses has no constitutionally cognizable liberty interest in juvenile status.[29]

We note, however, that the legislature has taken steps to ensure that the protections the defendants complain

---

[29] This threshold requirement for a substantive due process challenge is the same as that applicable to a procedural due process claim, as discussed in part I of this opinion. See, e.g., State v. Matos, supra, 240 Conn. 749; State v. Morales, supra, 240 Conn. 739.

of losing are adequately preserved under § 46b-127 (a) until after the criminal court has had an opportunity to determine if there is probable cause to believe that the defendant committed the offense charged. Section 46b-127 (a) mandates that a juvenile be arraigned within one court day of transfer to the criminal docket. The statute further requires that *all* juvenile files transferred pursuant to its terms remain sealed for ten days and that the file of any juvenile charged with a class B felony for whom the prosecutor recommends transfer to the juvenile docket must remain sealed until the court rules on the prosecutor's motion. Additionally, within the ten days of continued confidentiality, the court must conduct a probable cause hearing if such a hearing is required pursuant to *Gerstein* v. *Pugh,* 420 U.S. 103, 124–25, 95 S. Ct. 854, 43 L. Ed. 2d 541 (1975).[30] If no *Gerstein* hearing is required, the defendant nonetheless has the opportunity to move to dismiss the charges pursuant to General Statutes § 54-56.[31] The court may dismiss the charges if it finds that there is inadequate evidence to support a finding of probable cause with respect to the offense charged. See *State* v. *Corchado,* 200 Conn. 453, 460, 512 A.2d 183 (1986); *State* v. *Bellamy,* 4 Conn. App. 520, 527, 495 A.2d 724 (1985).

Consequently, the trial court must, either as a matter of course, or upon request of the defendant, make a

[30] *Gerstein* requires that any defendant in custody or subject to other "significant restraints on liberty," must be afforded a timely hearing to determine that probable cause exists to continue his detention. It is presumptively timely if the hearing is held within forty-eight hours of arrest, in the absence of a showing of some unreasonable delay. *County of Riverside* v. *McLaughlin,* 500 U.S. 44, 56, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991); see also C. Whitebread & C. Slobogin, Criminal Procedure Text (3d Ed. 1993) § 20.02, pp. 488–90.

[31] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or

determination that probable cause exists to believe that the defendant committed the offense charged. If the trial court concludes that no probable cause exists, it may dismiss the charges. If charges against a juvenile who was transferred to the criminal docket pursuant to § 46b-127 (a) are dismissed, § 46b-127 (c)[32] mandates that the juvenile shall resume his or her juvenile status.[33] Additionally, juveniles continue to remain in juvenile detention, segregated from the adult criminal population, until sentencing after conviction or until they reach the age of sixteen. General Statutes § 46b-127 (c). By building into § 46b-127 (a) the safeguard of ten days of continued confidentiality and other protections of subsection (c), the legislature has obviated the fear, alluded to by the defendants, that juveniles may suffer undue harm if prosecutors unfairly charge juveniles with one of the offenses enumerated in § 46b-127 (a) in order to force juveniles onto the criminal docket when the underlying facts do not support the charge. Finally, the legislature also has provided that at least those juveniles charged with class B felonies, other than

cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[32] General Statutes § 46b-127 (c) provides: "Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age, except that *no such child shall be placed in a correctional facility but shall be maintained in a facility for children and youth until he attains the age of sixteen years or until he is sentenced, whichever occurs first.* Such child shall receive credit against any sentence imposed for time served in a juvenile facility prior to the effectuation of the transfer. A child who has been transferred may enter a guilty plea to a lesser offense if the court finds that such plea is made knowingly and voluntarily. Any child transferred to the regular criminal docket who pleads guilty to a lesser offense shall not resume his status as a juvenile regarding said offense. *If the action is dismissed or nolled or if such child is found not guilty of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen years.*" (Emphasis added.)

[33] This return to juvenile status also occurs if the charges are nolled or if the juvenile is found not guilty of the enumerated offense charged and any lesser included offense. See *State* v. *Morales,* supra, 240 Conn. 737–38.

certain sexual assaults, who are on the criminal docket pursuant to § 46b-127 (a) are eligible for youthful offender status, which provides many of the same protections that juvenile status affords. See General Statutes § 54-76b et seq., set forth in footnote 6 of this opinion; *State* v. *Matos*, supra, 240 Conn. 750–52. With the protections of segregation in confinement, continued confidentiality, youthful offender status and the resumption of juvenile status upon dismissal, a juvenile suffers no appreciably greater harm by having the probable cause determination take place in the criminal court after the transfer than if it had occurred in the juvenile court prior to the transfer.

Although the defendants also raise their substantive and proceedural due process claims separately under article first, § 8, of the state constitution,[34] it is unnecessary for us to address that argument. The defendants concede that we consistently have concluded that the right to juvenile status "results from statutory authority, rather than from any inherent or constitutional right . . . and does not involve any fundamental right . . . ." (Internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 755; *State* v. *Anonymous*, supra, 173 Conn. 417–18; see also *In re Tyvonne M.*, supra, 211 Conn. 157 (no common-law right to juvenile status). Moreover, our research has revealed no case, and the defendants have cited to none, in which we have concluded that article first, § 8, is implicated in the absence of a constitutionally cognizable liberty interest. Because we conclude that the defendants have no vested liberty interest in juvenile status, they cannot prevail on their state constitutional claim.

### III

The defendants next assert that § 46b-127 (a) violates the equal protection clauses of the state and federal

---

[34] The constitution of Connecticut, article first, § 8, provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

constitutions.[35] They contend that § 46b-127 (a) does not require that all juveniles who are at least fourteen years of age and charged with class B felonies must be prosecuted as adults, but rather permits some to have their cases adjudicated as juveniles while others are tried as adults at the whim of the prosecutor. Consequently, they argue, fourteen and fifteen year old juveniles charged with certain enumerated felonies are similarly situated, but may be treated differently.

The law governing equal protection claims is well established. "To implicate the equal protection clauses under the state and federal constitutions . . . it is necessary that the *state statute in question, either on its face or in practice, treat persons standing in the same relation to it differently.* . . . The equal protection clause does not require absolute equality or precisely equal advantages . . . . Where, as here, the classification at issue neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attack if the distinction is founded on a rational basis. . . ."[36] (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Morales*, supra,

[35] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 1, of the Connecticut constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

The defendants concede that the equal protection provisions of the Connecticut constitution have the same scope as the fourteenth amendment to the federal constitution; they do not, therefore, raise an independent state constitutional claim.

[36] "Under the rational basis test, [t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the

240 Conn. 738–39; *State* v. *Matos*, supra, 240 Conn. 760–61; *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 755–56. Consequently, the defendants must show, as a threshold matter, that § 46b-127 (a), either on its face or as applied, treats similarly situated individuals differently.[37] We begin and end our discussion with an analysis of that threshold question. We conclude that § 46b-127 (a) facially does not treat similarly situated individuals differently and that the defendants have presented no evidence, nor even an allegation, of unequal treatment in practice.

The sole basis upon which the defendants rest their equal protection claim is the existence of prosecutorial discretion to recommend that juveniles who are fourteen years of age or older and are charged with class B felonies be transferred from the criminal docket to the juvenile docket. More specifically, the defendants take issue with the necessary corollary of this provision, which allows prosecutors the discretion *not* to recommend transfer. They argue that this discretion violates their right to the equal protection of the laws. We do not agree.

Contrary to the defendants' assertion, § 46b-127 (a) does require that *every* juvenile who is at least fourteen years old and is charged with a capital or class A or B

particular enactment is designed to accomplish that purpose in a fair and reasonable way. . . . In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Matos*, supra, 240 Conn. 762.

[37] It is only after it has been established that the complainant challenging the constitutionality of the statute meets the threshold requirement that the court will consider whether such differential treatment is rationally related to a legitimate governmental objective. See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 756.

felony or arson murder must automatically be transferred to the criminal docket. It also provides that a prosecutor may recommend transfer to the juvenile court of any juvenile charged with a class B felony. Consequently, every juvenile that comes within the scope of § 46b-127 (a) is treated identically by the statute. The possibility of different treatment occurs, if at all, at the hand of the prosecutor and the court in recommending and approving the subsequent transfer to the juvenile docket.[38] We conclude that the mere fact that a statute permits the prosecutor to treat one individual charged with a specific crime differently from another individual charged with the same crime or a crime of similar magnitude does not render the statute discriminatory on its face. We further conclude that the statute is not discriminatory as applied, in the absence of any evidence to that effect.

It is firmly settled in both state and federal due process jurisprudence that " '[a]bsent a showing of a selection deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification . . . conscious selectivity in enforcement of the law is not in itself a constitutional violation. *Oyler* v. *Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). A defendant claiming discriminatory prosecution must show (1) that others similarly situated have generally not been prosecuted and that he has been singled out and (2) that he is the victim of invidious discrimination based on impermissible considerations such as race, religion, or the exercise of a constitutionally protected right. *United States* v. *Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).' *State* v. *Haskins*, 188 Conn. 432, 474, 450

---

[38] To the extent the prosecutor and court exercise their discretion, it may be exercised in favor of the juvenile only by removing the case to the juvenile docket. If the prosecutor declines to request removal, or the court denies the request, the juvenile remains on the criminal docket, but does so pursuant to legislative mandate.

A.2d 828 (1982)." *State* v. *Delossantos*, 211 Conn. 258, 287–88, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

The defendants make no allegation that prosecutors, in applying § 46b-127 (a), have acted with a discriminatory purpose based on impermissible criteria, nor does the record support such a claim. There is no evidence that any prosecutorial decision to retain certain juveniles on the criminal docket was motivated by a discriminatory purpose. In keeping with our traditional review of inadequately supported allegations, "we note that the constitutional challenge to [§ 46b-127 (a)] comes to us in the posture least likely to succeed. [We have] frequently noted the imprudence of adjudicating constitutional questions in a 'factual vacuum.' . . . A party mounting a constitutional challenge to the validity of a statute must provide an adequate factual record in order to meet its burden of demonstrating the statute's adverse impact on some protected interest of its own, in its own particular case, and not merely under some hypothetical set of facts as yet unproven. . . . We do not give advisory opinions, nor do we sit as roving commissions assigned to pass judgment on the validity of legislative enactments." (Citations omitted; internal quotation marks omitted.) *State* v. *Floyd*, supra, 217 Conn. 78.

The defendants' reliance on *State* v. *Mohi*, 901 P.2d 991 (Utah 1995), in which the Utah Supreme Court declared the Utah transfer statute unconstitutional in light of Utah's uniform operation of laws clause, is unpersuasive.[39] The statute at issue in *Mohi* was substantially different from § 46b-127 (a) in that it permitted the prosecutor to decide whether to prosecute any

---

[39] The statute was declared unconstitutional on the basis of a provision of Utah's *state constitution*, although the court noted that a plurality of the court previously had concluded that the statute did not violate the federal constitution. *State* v. *Mohi*, supra, 901 P.2d 996.

juvenile as an adult or as a juvenile, irrespective of age or offense charged, without standards to guide the decision. Id., 999. The Utah court readily acknowledged that its statute is significantly different from statutes such as § 46b-127 (a), in which the prosecutor's discretion is limited to the ability to recommend removal to the juvenile docket of a juvenile who would otherwise be tried as an adult. Id. Consequently, the opinion of the Utah court, addressing a statute dissimilar to § 46b-127 (a) and based exclusively on Utah state constitutional grounds, provides no persuasive authority.[40]

Research has revealed no case, and the defendants point to none, in which a juvenile transfer statute was struck down as violative of equal protection solely because the prosecutor has discretion to recommend that a juvenile who would otherwise be tried as an adult be transferred to the juvenile docket. To the contrary, cases addressing prosecutorial discretion far greater than that provided by § 46b-127 (a) uphold the constitutionality of those statutes.[41] We conclude that the defendants' equal protection claim fails for lack of proof that § 46b-127 (a), either facially or as applied, treats similarly situated individuals differently.

[40] The defendants also rely on *Hughes* v. *State*, 653 A.2d 241 (Del. 1994), for support of their equal protection claim. As indicated in part I of this opinion, the rationale of *Hughes* is unpersuasive for lack of similarity between the statutes at issue. See footnote 25 of this opinion.

[41] Federal law, along with many state statutes, the constitutionality of which has been upheld, grant prosecutorial discretion to charge as either an adult or juvenile, not merely the discretion to recommend transfer to the juvenile court. See, e.g., *Russell* v. *Parratt*, supra, 543 F.2d 1216 (Nebraska law); *United States* v. *Quinones*, supra, 516 F.2d 1311 (federal law); *Cox* v. *United States*, supra, 473 F.2d 335–36 (same); *People* v. *Thorpe*, supra, 641 P.2d 939–40 (Colorado law); *People* v. *P.H.*, supra, 145 Ill. 2d 235–36 (Illinois law); *Jahnke* v. *State*, supra, 692 P.2d 927–29 (Wyoming law). Both the Georgia and New York statutes mandate adult adjudication in certain circumstances, but permit the prosecutor discretion to recommend transfer to the juvenile court from the criminal court and have been upheld against equal protection challenges. *Lane* v. *Jones*, supra, 244 Ga. 19; *Vega* v. *Bell*, supra, 47 N.Y.2d 551–52.

## IV

The defendants' final argument is that the discretion of the prosecutor to determine whether to recommend that a juvenile charged with a class B felony be transferred from the criminal docket to the juvenile docket without any statutory standards violates principles of separation of powers.[42] The crux of this argument, though not entirely clear, appears to be that § 46b-127 (a), by granting "control by the state's attorney's office over calling cases for trial" usurps the judicial function of controlling the court's docket. Practice Book § 44-12, formerly § 973, provides that "[t]he judicial authority, acting through the clerk, shall control the time and the manner of scheduling all proceedings in criminal cases . . . ." The defendants maintain that allowing prosecutors to decide which juveniles will be allowed to return to the juvenile docket, in their sole, exclusive and unrestricted discretion, without judicial review, impermissibly infringes upon the judicial function. We are not persuaded.

The law is well established with respect to evaluating "challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power . . . ." (Internal quotation marks omitted.) *Bartholomew* v. *Schweizer*, 217 Conn. 671, 676, 587 A.2d 1014 (1991). "Because the powers of the three branches of government inevitably overlap, this court has consistently held that the doctrine of the separation of powers cannot be applied rigidly . . .

[42] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

and has refused to find constitutional impropriety in a statute simply because it affects the judicial function . . . . A statute violates the constitutional mandate for a separate judicial magistracy *only* if it represents an effort by the legislature to exercise a power which lies *exclusively* under the control of the courts . . . . In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority. . . . A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, but also lies exclusively within judicial control; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Campbell*, supra, 224 Conn. 177–78; *Bartholomew* v. *Schweizer*, supra, 676–77.

We conclude that control of the criminal docket is not an exclusive judicial function. By this we mean only that the prosecution, by exercising its core function of determining which cases to prosecute, obviously exercises some "control" over the criminal docket. That, however, does not infringe on the separation of powers principle; it flows from that principle. Additionally, we conclude that § 46b-127 (a) does not permit the prosecutor to control the docket to the point of interfering with the orderly function of the judiciary. The legislature, by enacting laws that define criminal conduct, in large part already affects which cases will appear on the criminal docket. A prosecutor's decision whether to charge or whether to take a plea bargain also affects the docket. Although these actions affect the docket, they do not control the time and manner of scheduling. Similarly, the decision whether to request that an individual be transferred to the juvenile docket might affect,

but does not control, the docket. This is particularly true when, as here, the court must approve of the transfer prior to its effectuation. The absence of judicial review over the prosecutor's decision not to recommend transfer is no more an intrusion upon the judicial function than is the lack of review of a prosecutor's decision not to charge or not to offer a plea bargain. Consequently, we conclude that § 46b-127 (a) does not violate the mandate of separate magistracies in article second of the constitution of Connecticut, as amended by article eighteen of the amendments.

The judgments are affirmed.

In this opinion the other justices concurred.