## TYRONE E. PAYNE *v.* TK AUTO WHOLESALERS (AC 26771)

Gruendel, Rogers and Lavine, Js.

Argued September 27—officially released November 28, 2006

*Tyrone E. Payne,* pro se, the appellant (plaintiff).

*P. Jo Anne Burgh,* with whom, on the brief, was *John L. Laudati,* for the appellee (defendant).

### Opinion

GRUENDEL, J. The pro se plaintiff, Tyrone E. Payne, appeals from the judgment of the trial court dismissing his action against the defendant, TK Auto Wholesalers, for lack of subject matter jurisdiction. He claims that the court improperly concluded that he lacked standing. We agree and, accordingly, reverse the judgment of the trial court.

This appeal exemplifies that, in appellate adjudication, it is the law that must prevail, rather than any particular party. The fascinating facts are as follows.[1] On February 7, 2003, the plaintiff headed to the defendant's premises with the aim of purchasing a 1995 Lincoln Mark VIII automobile. Michael Robson, an employee of the defendant, greeted the plaintiff, who identified himself as Paul Payne.[2] After a cursory examination of the automobile on the defendant's premises, the plaintiff agreed to purchase it. The two proceeded to Robson's office to complete the necessary paperwork, where the plaintiff provided Robson with a Connecticut driver's license in the name of Paul Payne and signed both a credit application and purchase order as Paul Payne. At that time, Robson noticed that the photograph on the driver's license looked nothing like the plaintiff. He nevertheless continued the transaction without raising any concern as to the plaintiff's identity and allegedly accepted the plaintiff's down payment of $1300 in cash. Although the plaintiff expressed a desire to take the automobile that day, Robson explained that bank approval of the purchase and vehicle registration first were required.

After the plaintiff left the premises, Robson obtained a telephone number for Paul Payne. When Robson contacted him and inquired about the purchase, Paul Payne stated that he was not purchasing an automobile. Paul

---

[1] Our recitation of the facts is guided by the following precepts. "In determining whether the complaint alleges facts sufficient to establish subject matter jurisdiction, two well established principles must be considered. First, [a] reviewing court should indulge every presumption in favor of the trial court's subject matter jurisdiction. . . . Second, we must view the factual allegations of the complaint in the light most favorable to the plaintiff." (Citation omitted; internal quotation marks omitted.) *Amore* v. *Frankel*, 228 Conn. 358, 374, 636 A.2d 786 (1994). We take the facts alleged as true for purposes of our analysis in this appeal only and express no opinion as to the merits of the underlying action.

[2] Paul Payne is the plaintiff's cousin and is not a party to this action.

Payne then told Robson that the plaintiff had stolen his identity and asked Robson to contact the police. Robson complied, and the police in turn instructed Robson to contact the plaintiff and ask him to return to the premises to complete the transaction. At approximately 7 p.m. that evening, the plaintiff arrived. As the plaintiff completed a vehicle registration form, officers from the Plainville police department apprehended him. Officer Eric Peterson asked the plaintiff his name, to which he replied, "Paul Payne." Peterson also observed that the plaintiff had signed Paul Payne on the registration form. At the time of arrest, officers found the aforementioned Connecticut driver's license, a birth certificate of Paul Payne and certain tax documents of Paul Payne in the plaintiff's possession. The jury subsequently convicted the plaintiff of identity theft in violation of General Statutes § 53a-129a, forgery in the second degree in violation of General Statutes § 53a-139 (a) (1), criminal attempt to commit larceny in the second degree in violation of General Statutes § 53a-123 (a) (1) and criminal impersonation in violation of General Statutes § 53a-130 (a) (1).

While incarcerated, the plaintiff commenced this civil action in April, 2004. His complaint alleged statutory theft in violation of General Statutes § 52-564,[3] unconscionability of contract under General Statutes § 42a-2-302[4] and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The accompanying prayer for relief sought $1300

---

[3] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[4] The doctrine of unconscionability generally serves as a special defense in contract actions. See, e.g., Hottle v. BDO Seidman, LLP, 268 Conn. 694, 704, 846 A.2d 862 (2004); IBM Credit Corp. v. Mark Facey & Co., 44 Conn. App. 490, 491, 690 A.2d 410 (1997). Although the complaint alleged that the purchase order was unconscionable, the plaintiff acknowledges in his appellate brief that unconscionability "was [a] basis of his CUTPA claim."

in compensatory damages and $9 million in punitive damages due to the "severe emotional distress" he had endured. During oral argument on a motion to strike, the court learned that the plaintiff had removed $3000 from Paul Payne's bank account. As the court recounted: "Despite being notified of his constitutional right, the plaintiff stated that he obtained the aforementioned money by presenting identification documents to the bank that were in the name of Paul Payne." In response, the defendant argued that the plaintiff lacked standing to maintain the action. The court agreed and dismissed the action for lack of subject matter jurisdiction. In its memorandum of decision, the court stated: "The plaintiff freely admits how he obtained the subject money. The manner in which it was obtained did not imbue the plaintiff with a possessory interest in the [$1300 down payment]. While the bank or the plaintiff's cousin [Paul Payne] may have a possessory interest in the money, the plaintiff does not. Simply put, the money was not his. Since the plaintiff does not have a possessory interest in the money, he does not have the legal right to seek its recovery." The plaintiff thereafter filed a motion to open the judgment, which the court denied, and this appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that he lacked standing to maintain his action against the defendant. "Standing is the legal right to set judicial machinery in motion . . . and implicates this court's subject matter jurisdiction. . . . A party cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . The burden rests with the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

dispute." (Citations omitted; internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 511, 849 A.2d 791 (2004). "The question of standing does not involve an inquiry into the merits of the case. . . . It merely requires allegations of a colorable claim of injury to an interest that is arguably protected by [a] statute or common law." (Internal quotation marks omitted.) *McGinty* v. *McGinty*, 66 Conn. App. 35, 38, 783 A.2d 1170 (2001). Our review of this question is plenary. *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 446, 844 A.2d 836 (2004).

We consider first whether the plaintiff has a legally protected interest in the present case. The court concluded that the plaintiff had no possessory interest in the money he surrendered to the defendant as a down payment on the automobile. We disagree. As the United States Court of Appeals for the Second Circuit explained in *United States* v. *Haqq*, 278 F.3d 44 (2d Cir. 2002), "[a]lthough a thief certainly has no ownership interest in a stolen item, the law recognizes his possessory interest: the well-settled common-law rule [is] that a thief in possession of stolen goods has an ownership interest superior to the world at large, save one with a better claim to the property." (Internal quotation marks omitted.) Id., 50; see also *Government of the Virgin Islands* v. *Edwards*, 903 F.2d 267, 273 (3d Cir. 1990) ("[i]t has long been a principle of common law that one in possession of property has the right to keep it against all but those with a better title"); *Anderson* v. *Gouldberg*, 51 Minn. 294, 295, 53 N.W. 636 (1892) (holding that thief may maintain replevin action against third party that deprived him of stolen goods). As Justice Holmes observed more than one century ago, "one who has possession of goods is entitled to keep them as against any one not having a better title . . . ." *Odd Fellows Hall Assn.* v. *McAllister*, 153 Mass. 292, 295, 26 N.E. 862 (1891).

Connecticut law long has recognized that "[t]he person in possession the law regards as owner, except in a contest with one who has the true title." *Fowler* v. *Fowler*, 52 Conn. 254, 257 (1884); see also *Hall* v. *Schoenwetter*, 239 Conn. 553, 563, 686 A.2d 980 (1996); *Chapel-High Corp.* v. *Cavallaro*, 141 Conn. 407, 411, 106 A.2d 720 (1954). That principle is embodied in our Penal Code. General Statutes § 53a-118 (5) defines an "owner" as "any person who has a right to possession superior to that of a taker, obtainer or withholder," a definition used for purposes of larceny, robbery and related offenses. Our case law further acknowledges that "[t]he term owner is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." (Internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 329, 852 A.2d 703 (2004). In light of the foregoing, we conclude that the plaintiff had a legally protected possessory interest in the money he surrendered to the defendant on February 7, 2003.

We turn next to the question of whether the plaintiff alleged a colorable claim of injury. To prevail, he must demonstrate that he "has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *Edgewood Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 288, 828 A.2d 52 (2003), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004). The plaintiff's complaint alleged that, cognizant of the discrepancy between his person and the driver's license he had provided, the defendant nevertheless knowingly accepted the $1300 down payment on the automobile.

Because the automobile transaction never was completed nor was the $1300 returned, the plaintiff claims a direct injury due to his superior possessory interest in the money.

In its appellate brief, the defendant contends that the plaintiff's injury is indirect. "[D]irectness of injury is, and has long been, a part of the standing inquiry." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 364, 780 A.2d 98 (2001). Consequently, where "the harms asserted to have been suffered directly by a plaintiff are in reality derivative of injuries to a third party, the injuries are not direct but are indirect, and the plaintiff has no standing to assert them." Id., 347–48. The defendant maintains that because the plaintiff conceded that he obtained the money by presenting identification documents to his cousin's bank that were in the name of Paul Payne, the money properly belonged to either the bank or Paul Payne. Hence, it argues that the plaintiff suffered no direct injury. We do not agree. The plaintiff's complaint did not allege injuries to a third party, but rather to the plaintiff. Although both the bank and Paul Payne certainly were injured in the present case, it remains that the plaintiff's possessory interest in the $1300 is superior to that of the defendant. We find instructive the decision of the Supreme Court of Minnesota in *Anderson* v. *Gouldberg*, supra, 51 Minn. 294. The plaintiff in that case obtained possession of certain timber by trespassing on the land of a third party, only to have the timber stolen by the defendant. In defending against an action by the plaintiff for replevin, the defendant maintained that the plaintiff was not the rightful owner of the property. The court rejected such a defense: "When it is said that to maintain replevin the plaintiff's possession must have been lawful, it means merely that it must have been lawful as against the person who deprived him of it; and possession is good title against all the world except those having a better

title. . . . One who takes property from the possession of another can only rebut this presumption [of title] by showing a superior title in himself, or in some way connecting himself with one who has." Id., 295–96; see also 4 Restatement (Second), Torts § 895, comment (f), pp. 387–88 (1979).

In the present case, only the plaintiff and the defendant are parties to the action. The defense that the money at issue properly belonged to either Paul Payne or his bank is of no avail to the defendant. We therefore conclude that the plaintiff has alleged a colorable claim of direct injury. Consequently, the court's determination that the plaintiff lacked standing to pursue his action against the defendant cannot stand.

Under Connecticut law, a possessory interest sufficiently establishes standing to pursue a conversion action in our courts. See *Label Systems Corp.* v. *Aghamohammadi*, supra, 270 Conn. 330 (plaintiff's possession and control of car gave it standing to bring conversion claim as to insurance proceeds related to accident involving company car); *Lawton* v. *Weiner*, 91 Conn. App. 698, 719, 882 A.2d 151 (2005) (because plaintiff had possessory interest in posters, plaintiff had standing to bring claim for conversion of posters). We have neither been presented with nor can we discern any reason why a different result should attach to CUTPA cases. Although CUTPA is an "essentially equitable" cause of action; *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 155, 645 A.2d 505 (1994); the court's finding that the plaintiff procured the $1300 by thievery has little relevance to the issue of whether he has standing to maintain an action regarding the defendant's acceptance and retention of his down payment. Rather, that finding pertains to the merits of the action. Although this particular plaintiff may have come to the court with unclean hands; see *Thompson* v. *Orcutt*, 257 Conn. 301, 310–11,

777 A.2d 670 (2001); that factor has no place in this stage of the proceedings.

Viewing the factual allegations of the complaint in the light most favorable to the plaintiff, it is clear to us that he had a possessory interest superior to that of the defendant and has been directly injured by the defendant's alleged retention of the down payment on the automobile. In the eyes of the law, the plaintiff, as the person in possession, must be regarded as the owner of the property in question, except in a contest with one who has the true title. Accordingly, the plaintiff has standing to pursue his claim against the defendant. The court improperly concluded that it lacked subject matter jurisdiction in the present case.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.