******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MICHAEL PERUGINI
(AC 36266)

DiPentima, C. J., and Beach and Prescott, Js.

*Argued October 20—officially released December 23, 2014*

(Appeal from Superior Court, judicial district of Ansonia-Milford, geographical area number five, Matasavage J.)

*Michael Perugini*, self-represented, the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *John F. Kerwin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Michael Perugini, appeals from the judgment of the trial court denying his motion for the return of seized property. On appeal, the defendant claims that the court improperly concluded that he was not entitled to the return of seized property because he lacked a valid ownership or security interest in it sufficient to be the "rightful owner." We conclude that the court properly determined that the defendant failed to establish that he was the rightful owner of the seized property. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The defendant and David Flatau leased the same airplane hangar at Waterbury-Oxford Airport, in which they stored their respective aircraft. On April 15, 2012, the defendant discovered that his aircraft had been moved within the hangar, and that its wingtip had been damaged. Flatau's friend, Jeff Foster, admitted to having moved the defendant's aircraft, and stated that he would take responsibility for the damage. The defendant, Flatau, and Foster entered into negotiations regarding compensation to repair the wingtip, but failed to reach an agreement.

After the negotiations had broken down, the defendant believed that Flatau had vacated the hangar, and noticed that Flatau's electric aircraft tug (tug), a machine that was used to tow aircraft along the ground, remained in the hangar. The defendant removed the tug from the hangar and held it at his residence. The defendant subsequently filed a small claims action against Flatau for the costs to repair the wingtip, but withdrew the action shortly thereafter. In a subsequent letter to Flatau, the defendant stated that, although he had withdrawn his civil action, he still was "holding your inoperative tug as security towards the damages" to his aircraft.

Flatau provided to the police a sworn statement wherein he averred that his tug was missing, and that he suspected that the defendant had taken it. Flatau later provided to the police a description of the tug, its serial or internal order number,[1] and the name of the individual from whom he had purchased the tug.

The police questioned the defendant about the tug. The defendant admitted to taking the tug, and stated that he had a lien on it because Flatau had refused to pay to fix his damaged aircraft. The defendant provided to the police an affidavit, in which he averred that he had "removed said tug from the premises and [am] holding it in my possession as lawful security towards a possible judgment [that] may be rendered against [Flatau] in small claims court." The defendant further averred: "I have no need for . . . Flatau's inoperative tug, as I already own a motorized tractor to move my

aircraft, and [am] simply holding it as lawful security interest in my civil action." Upon the request of the police, the defendant could produce no legal authorization to remove the tug from the hangar to hold it as security.

The defendant then was arrested pursuant to a warrant for third degree larceny in violation of General Statutes § 53a-124 (a) (2). The police also obtained a search warrant for the defendant's residence and, during the course of the search, seized the tug. Flatau subsequently filed with the police a form requesting, as the owner of seized property, the return of the tug.[2]

The defendant later was charged in a long form information with third degree larceny, criminal trover in the second degree in violation of General Statutes § 53a-126b, and disorderly conduct in violation of General Statutes § 53a-182 (a) (2). On October 8, 2013, the state and the defendant[3] reached a plea agreement under which the defendant agreed to plead guilty to a substitute information charging him with the infraction of creating a public disturbance in violation of General Statutes § 53a-181a.

After his plea was entered, the court, *Matasavage, J.*, ordered that the seized property be released to its "rightful owner." At that point, the defendant essentially made an oral motion for the return of seized property on the ground that he had a lien on the tug. In response, the court stayed its order until October 15, 2013, to provide the defendant the opportunity to demonstrate that he was the owner of the tug or had a valid security interest in it. One day before that deadline, on October 14, 2013, the defendant filed a new motion for return of seized property in which he claimed for the first time, inter alia, that he was entitled to the return of the tug because the search warrant affidavit did not provide a substantial basis to establish probable cause to permit its seizure. On October 22, 2013, the court denied the defendant's oral motion for the return of seized property. The court reasoned that "[t]he defendant has not produced any proof of ownership, nor any valid, legal security interest." In its order, the court did not address the defendant's claim, set forth in his October 14, 2013 motion, regarding probable cause. This appeal followed. Additional facts will be set forth as necessary.

At the outset, it is important to note that the defendant does not challenge the judgment rendered against him in accordance with his plea. Rather, the defendant challenges the court's denial of his oral motion for the return of seized property.[4] The defendant claims that the court improperly (1) declined to order the tug returned to him as the person from whom the property was seized, and (2) concluded that he had failed to demonstrate a valid ownership interest in the property though a lien. Both claims will be addressed in turn.

## I

First, the defendant claims that the court improperly applied General Statutes § 54-36a[5] and ordered the seized property released to its rightful owner. The defendant argues that the court instead should have ordered that the seized property be released to the person from whom it was seized. We disagree.

Our Superior Court historically has possessed inherent and common-law authority to dispose of property seized and detained as evidence in a criminal case. See *Bruchal* v. *Smith*, 109 Conn. 316, 320–21, 146 A. 491 (1929) (courts have inherent power to direct that property seized as evidence in criminal cases "be returned to the owner, delivered up on his order, or otherwise disposed of, when it is no longer required for the purposes of justice"). More recently, the power to return seized property to its owner upon the resolution of a criminal action was codified in § 54-36a (c),[6] which provides in relevant part that the trial court "shall, at the final disposition of the criminal action or as soon thereafter as is practical . . . order the return of such property to its owner within six months upon proper claim therefor."

In the present case, § 54-36a (c) obligated the court to order that the seized property be released to its owner after the final disposition of the defendant's criminal case.[7] Consequently, the court properly ordered that the property be returned to its rightful owner who, as detailed in part II of this decision, was not necessarily the person from whom the property was seized.

## II

Next, the defendant claims that, even if the court's order that the seized property be returned to its rightful owner was proper, the court improperly concluded that the defendant was not entitled to the property's return. The defendant specifically contends that he was entitled to the property because he "still holds a valid claim of lien to said property for unpaid damages caused by Flatau." This claim has no merit.

As stated previously, the court was required by § 54-36a (c) to order that the seized property be returned "to its owner." "Owner" is defined in § 54-36a (a) as "a person or persons entitled to seized property as a matter of law or fact." General Statutes § 54-36a (a) (3). It is true that "[i]t has long been a principle of common law that [t]he party in possession [of property] is regarded by the law as the owner . . . ." (Internal quotation marks omitted.) *Hall* v. *Schoenwetter*, 239 Conn. 553, 563, 686 A.2d 980 (1996). Nonetheless, this principle is inapplicable "in a contest with one who has true title." (Internal quotation marks omitted.) Id.[8]

In the present case, Flatau filed with the court a form requesting that the seized property be returned to him

as its owner. The court, additionally, had in its record a sworn statement from Flatau, whereby he averred that he owned the tug. The defendant conceded[9] on multiple occasions that Flatau owned the tug, and admitted to removing the tug from the hangar. The defendant, nevertheless, claims that the trial court improperly refused to release the property to him, not because he claims to be the owner, but because the tug was his security to recover alleged unpaid damages to his aircraft.

There is no evidence in the record indicating that the defendant had filed an application for a prejudgment remedy[10] or obtained a judgment such that he had a legal lien or security interest attached to the seized property. Indeed, the defendant conceded that he took the tug as "lawful security towards a *possible* judgment [that] *may* be rendered against [Flatau] in small claims court." (Emphasis added.) The mere possibility that a civil judgment might, at some point in the future, be entered in the defendant's favor did not bestow upon him a right to seize Flatau's property unilaterally. Consequently, the record supports the court's conclusion that the defendant did not establish that he was the rightful owner or that he had a valid security interest in the seized property. We thus conclude that the court properly denied the defendant's motion to return seized property.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The police warrant affidavit was unclear as to whether Flatau had provided the tug's serial number or internal purchase number.

[2] During the pendency of his criminal case, the defendant objected to Flatau's request for the return of seized property on the ground that the tug was not "stolen property" because the defendant had a lien on it, and the property cannot be returned to Flatau "until the defendant is either found guilty of larceny by a jury, or chooses to voluntarily relinquish his claim to it." That objection is not relevant to the resolution of this appeal. The defendant's objection to Flatau's request pertained to the disposition of the seized property while the defendant's criminal case was pending. The defendant's appeal, however, relates solely to the court's disposition of seized property after his criminal case had reached its conclusion.

[3] The defendant has represented himself throughout these proceedings.

[4] The defendant additionally claims that the court improperly failed to determine that the search warrant affidavit lacked probable cause. We need not address this claim as it is not relevant to the resolution of this appeal. The judgment in accordance with the defendant's guilty plea, which was entered on October 8, 2013, disposed of the criminal action against him. The disposition of seized property was thereafter governed by § 54-36a. Consequently, when the defendant filed the October 14, 2013 motion, his claim regarding lack of probable cause had been rendered moot.

[5] Although the court's order did not cite § 54-36a, both the defendant and the state agree that the court relied on this statute.

[6] General Statutes § 54-36a (c) provides: "Unless such seized property is stolen property and is ordered returned pursuant to subsection (b) of this section or unless such seized property is adjudicated a nuisance in accordance with section 54-33g, or unless the court finds that such property shall be forfeited or is contraband, or finds that such property is a controlled drug, a controlled substance or drug paraphernalia as defined in subdivision (8), (9) or (20) of section 21a-240, it shall, at the final disposition of the criminal action or as soon thereafter as is practical, or, if there is no criminal action, at any time upon motion of the prosecuting official of such court, *order the return of such property to its owner* within six months upon

proper claim therefor." (Emphasis added.)

[7] The defendant maintains that the court improperly treated the tug as "stolen property," pursuant to § 54-36a (b) (2). The state contends that the court did not treat the tug as "stolen property," or any other category of illicit property, and, instead, ordered it returned to its owner pursuant to § 54-36a (c). After the court had issued its order, the defendant filed a motion for articulation requesting, inter alia, that the court specify whether it had treated the property as "stolen property, or property not stolen." In its articulation of decision, the court merely restated its original order. Nonetheless, the record indicates that the court's order was issued pursuant to § 54-36a (c), and that the court did not treat the seized property as "stolen property." We thus analyze whether the court's order complied with § 54-36a (c).

[8] Although the defendant does not specifically analyze precedent bearing upon the legal implication of the fact that he had possession of the tug when it was seized, we recognize that a civil plaintiff's possessory interest in property may confer standing to bring a civil action. See *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 330, 852 A.2d 703 (2004) (plaintiff's possession and control of car gave it standing to bring conversion claim as to insurance proceeds related to accident involving company car); *Payne* v. *TK Auto Wholesalers*, 98 Conn. App. 533, 542, 911 A.2d 747 (2006) (thief had standing to assert statutory civil theft claim and CUTPA claim against car dealership that did not return down payment thief made using stolen funds because thief's possessory interest was superior to car dealership's). Those cases, in which the true owner had not intervened to assert ownership, are inapposite to the present case. It is well established that the principle of possession providing standing is inapplicable "in a contest with one who has true title." (Internal quotation marks omitted.) *Hall* v. *Schoenwetter*, supra, 239 Conn. 563.

[9] The defendant conceded in an affidavit and a letter that he wrote to Flatau, which were attached as exhibits supporting his October 14, 2013 motion, that Flatau was the tug's owner.

[10] The defendant has not claimed that he is entitled to a prejudgment remedy pursuant to General Statutes § 52-278a et seq.