STATE OF CONNECTICUT *v.* DANIEL PEREZ*
(AC 23457)

West, DiPentima and McLachlan, Js.[1]

---

* This opinion supersedes the opinion of this court in *State* v. *Perez*, 80 Conn. App. 354, 835 A.2d 84 (2003), which was published December 2, 2003.

[1] Associate Judges Thomas G. West, Alexandra D. DiPentima and C. Ian McLachlan heard this case initially on September 18, 2003.

Argued September 18, 2003—officially released March 23, 2004

*Francis T. Mandanici,* assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *Maxine V. Wilensky*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Daniel Perez, filed a motion requesting that this court reconsider en banc our decision in *State* v. *Perez*, 80 Conn. App. 354, 835 A.2d 84 (2003). Although the court denied the defendant's motion for reconsideration en banc, this panel decided to grant reconsideration, sua sponte, and to publish this opinion in place of *State* v. *Perez*, supra, 354, for the purpose of clarifying our previous decision. We once again affirm the judgment of the trial court.

The defendant appeals from the judgment of conviction rendered by the trial court subsequent to his plea of nolo contendere to the charge of assault in the first degree in violation of General Statutes § 53a-59 (a) (3). On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss due to selective prosecution and (2) denied his request for an evidentiary hearing on the same issue. The defendant asserts that the court's decisions were improper because he made a prima facie showing that both prongs of the test for selective prosecution were satisfied.[2] We are not persuaded.

At the oral argument on the defendant's motion to dismiss and request for an evidentiary hearing, the defendant made an offer of proof. The offer of proof contained the following documents: police reports from

---

[2] To prove a claim of selective prosecution, a defendant must show "(1) that others similarly situated have generally not been prosecuted and that he has been singled out and (2) that he is the victim of invidious discrimination based on impermissible considerations such as race, religion, or the exercise of a constitutionally protected right." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 127, 715 A.2d 652 (1998).

the accident, state and local police pursuit policies, the state's brief from the case of *State* v. *Scribner*, 72 Conn. App. 736, 805 A.2d 812 (2002), and a notice of intent to sue and civil complaint with which the guardian of the defendant's victim brought suit against the city of Meriden and several Meriden police officers.[3] The court accepted the defendant's offer of proof "as being, in fact, the circumstances that exist, the police report, the fact that the police officers in the city of Meriden have been sued by the family of the victim,[4] [and] the high speed pursuit policies of both the State and Meriden." After "accepting . . . every bit of [his] offer of proof," however, the court concluded that it was "quite clear in [its] mind" that the defendant had not made out a prima facie case of selective prosecution. Accordingly, the court denied his motion to dismiss and his request for an evidentiary hearing.

The following relevant facts were contained in the defendant's offer of proof.[5] On May 28, 2000, the Berlin

[3] The guardian of the person and estate of the victim brought suit against the city of Meriden and several members of the Meriden police department. The complaint alleged that the personal injuries and losses suffered by the victim were caused by the negligence and carelessness of the defendants. That case, *Hunter* v. *Meriden*, Superior Court, judicial district of Waterbury, Docket No. CV-01-0179745S (August 20, 2001), currently is pending on the Waterbury complex litigation docket.

[4] The defendant argues that the court, by accepting his offer of proof, accepted as true the fact that the Meriden police officers caused the accident. The court was quite clear, however, that by accepting the defendant's offer of proof, it accepted as "the circumstances that exist . . . the fact that the police officers in the city of Meriden *have been sued by the family of the victim* . . . ." (Emphasis added.) The court accepted as true the fact that the action had been filed but made no factual determination as to the accuracy of the allegations regarding causation.

[5] Although the defendant asserts that the court made "findings of fact" by accepting as true his offer of proof, that assertion is an inaccurate statement of the law. When hearing a motion to dismiss, "the court is confined to determining whether the . . . evidence, if believed and if given the benefit of all favorable inferences, makes out a prima facie case. . . . The court, on such a motion, *may not make findings of fact* . . . ." (Citation omitted; emphasis added.) *Thomas* v. *West Haven*, 249 Conn. 385, 399, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d

police department attempted to stop and approach the vehicle being driven by the defendant after discovering that it was displaying a stolen marker plate. A Berlin police officer stopped the vehicle, and, as he approached the vehicle, the defendant sped away in an apparent attempt to flee. The officer pursued the vehicle to no avail. As the chase neared the Meriden town line, the Berlin police department notified the Meriden police department of the chase and of the fact that the defendant was approaching the town line. The Berlin police department abandoned the chase when the defendant reached Meriden.

Once the defendant was in Meriden, a Meriden police officer discovered the defendant driving southbound in a northbound lane. The officer observed the defendant changing back and forth between the northbound and southbound lanes, almost striking vehicles head on and forcing northbound vehicles off the road. The officer estimated that the defendant had been driving in that manner for approximately four miles since the Berlin police department abandoned its pursuit. At that time, a second pursuit began between the Meriden police officer and the defendant, who failed to yield and continued to flee in a dangerous manner.

Throughout the pursuit, the defendant drove approximately sixty to seventy miles per hour through a densely populated thirty-five mile per hour zone. The defendant repeatedly drove on the wrong sides of the road and median, forcing traffic onto the sidewalk and into oncoming traffic. Several Meriden police officers assisted with the pursuit by attempting to warn oncom-

---

99 (2000). Although that case applies to a civil motion for a judgment of dismissal pursuant to Practice Book § 15-8, we conclude that the rationale also applies to a motion to dismiss in a criminal case. Accordingly, we conclude that the court did not make findings of fact simply because it accepted as true, for purposes of determining whether the defendant had made out a prima facie case, the information contained in his offer of proof.

ing traffic of the defendant and by trying unsuccessfully to guide him onto a highway and away from the densely populated area.

The pursuit ended when the defendant, while traveling southbound in a northbound lane, struck a vehicle whose driver was attempting to turn left. The driver of the vehicle suffered severe personal injuries, including massive head and brain injuries, neurological injuries, and massive pelvic and internal injuries. At the scene of the crash, the Meriden police officers found the defendant trying frantically to escape the vehicle in an apparent attempt to flee on foot. The officers also discovered two passengers in the defendant's vehicle, one of whom was yelling at the defendant for having ignored the passenger's requests to stop the chase.

The defendant was charged with two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3), and two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (2) and (3), as well as with numerous motor vehicle violations. The defendant filed a motion to dismiss the prosecution on the ground of selective prosecution and requested an evidentiary hearing on the issue. The court denied both the defendant's motion and his hearing request. The defendant thereafter pleaded nolo contendere to one count of assault in the first degree in violation of § 53a-59 (a) (3) and was sentenced to twenty years imprisonment, execution suspended after ten years. The defendant's plea was conditional on his right to appeal, pursuant to General Statutes § 54-94a and Practice Book § 61-6, from the denial of his motion to dismiss. The defendant appealed to this court.

I

The defendant first claims that the court improperly denied his motion to dismiss on the ground of selective

prosecution because (1) the Meriden police officers were similarly situated relative to him but were not prosecuted, and, therefore, he was selectively prosecuted, and (2) he was the victim of invidious discrimination on the basis of his status as a nonpolice officer.

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Vitale*, 76 Conn. App. 1, 14, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003).

The test for selective prosecution is well settled. "A defendant claiming discriminatory prosecution must show (1) that others similarly situated have generally not been prosecuted and that he has been singled out and (2) that he is the victim of invidious discrimination based on impermissible considerations such as race, religion, or the exercise of a constitutionally protected right." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 127, 715 A.2d 652 (1998). In determining whether two groups are similarly situated for equal protection purposes, we must look for "persons situated similarly in all *relevant* aspects . . . ." (Emphasis in original; internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 402, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). "[W]e have traditionally accorded the state's attorney broad discretion in determining what crime or crimes to charge in any particular situation. . . . And unless constitutional or

other compelling reasons require otherwise, we abstain from setting policy for the performance of the prosecutorial function." (Citation omitted; internal quotation marks omitted.) *State* v. *Ellis*, 197 Conn. 436, 478, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990).

## A

We first address the issue of whether the Meriden police officers and the defendant were "similarly situated" in satisfaction of prong one of the test for selective prosecution. In support of his claim as to that prong, the defendant argues that the officers, as well as the defendant, were violating the law by speeding and driving on the wrong side of the road, that the officers are not immune from criminal liability because the chase violated state and local pursuit guidelines, and that the officers were the proximate cause of the accident because had they not pursued him, no accident would have resulted. To make that determination, we must consider and weigh the similarities and differences between the two groups to determine whether they are situated similarly in all *relevant* aspects. See *Thomas* v. *West Haven*, supra, 249 Conn. 402.

In this case, the relevant differences between the groups far outweigh the relevant similarities. The only similarity shared by the defendant and the Meriden police officers is the fact that both groups exceeded the speed limit and drove into oncoming traffic during a police pursuit. Looking now to their relevant differences, we have, on the one hand, a criminal suspect in possession of stolen property, fleeing from law enforcement officials, leading officers from two police departments on a high speed chase through a densely populated area and into oncoming traffic. We have, on the other hand, the Meriden police officers, acting in their official capacities, attempting to apprehend a flee-

ing suspect in possession of stolen property. The relevant differences, without question, far outweigh the relevant similarities.

In addition, the Meriden police officers, unlike the defendant, were authorized by General Statutes § 14-283 (a) and (b)[6] to exceed the posted speed limit and to disregard regulations governing the direction of movement in their pursuit of a fleeing law violator. Although it is possible to exceed that authority; see *State* v. *Scribner*, supra, 72 Conn. App. 742; that issue is not before us. It is well settled that we do not find facts; *Bria* v. *Ventana Corp.*, 58 Conn. App. 461, 466, 755 A.2d 239 (2000); and therefore it is not this court's role to make a determination, sua sponte, of whether the police officers exceeded their statutory authority. It is only for this court to decide whether the defendant and the Meriden police officers were "similarly situated" for equal protection purposes. We hold, without hesitation, that they were not.

## B

The defendant further claims that he has satisfied the second prong of the test for selective prosecution. In support of his claim, the defendant asserts that he was the victim of invidious discrimination because "the unjustifiable standard in the present case . . . concerned color, but not the color of skin. . . . [T]he people making the decisions either wear a blue uniform or

---

[6] General Statutes § 14-283 (a) provides in relevant part: " 'Emergency vehicle', as used in this section, means . . . any state or local police vehicle operated by a police officer . . . in the pursuit of fleeing law violators . . . while in the course of such officer's employment and while responding to an emergency call."

General Statutes § 14-283 (b) provides in relevant part: "The operator of any emergency vehicle may . . . (3) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a or 14-219 as long as such operator does not endanger life or property by so doing, and (4) disregard statutes, ordinances or regulations governing direction or movement or turning in specific directions."

identify with those who do and work closely with them . . . . It is because of the blue uniform that the state chose not to prosecute said police officers while it is because the defendant is not a police officer that the state chooses to prosecute him." That claim warrants little discussion.

It is ludicrous to suggest that the entire population of nonpolice officers in the state of Connecticut is discriminated against on the basis of an "impermissible consideration" comparable to race and religion. The defendant's contention that he was the victim of invidious discrimination on the basis of his status as a nonpolice officer fails without question. We conclude that the defendant has not satisfied either prong of the test for selective prosecution.

## II

The defendant next claims that the court improperly denied his request for an evidentiary hearing to prove selective prosecution. In support of his claim, the defendant asserts that he had a due process right to introduce evidence to prove his defense.

We review a court's decision not to hold an evidentiary hearing on the issue of selective prosecution for abuse of discretion. *United States* v. *Fares*, 978 F.2d 52, 59 (2d Cir. 1992). "Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 216, 784 A.2d 958 (2001).

Neither this court nor our Supreme Court has yet determined under what circumstances a defendant claiming selective prosecution is entitled to an evidentiary hearing. We believe that the better view is that "[n]o evidentiary hearing . . . is required unless the [trial] court, in the exercise of its discretion, finds that the required prima facie showing has been made as to both elements of the test." *St. German of Alaska Eastern Orthodox Catholic Church* v. *United States*, 840 F.2d 1087, 1095 (2d Cir. 1988).[7] Consequently, we hold that an evidentiary hearing to prove selective prosecution is not a matter of right and is not available to every defendant, but rather is to be granted at the discretion of the trial court following a prima facie showing by the defendant that a legitimate claim exists with regard to both prongs of the selective prosecution test.

In this case, the court considered the defendant's offer of proof and concluded, as a matter of law, that he had not and could not make a prima facie showing of selective prosecution. The court stated: "[E]ven accepting . . . every bit of your offer of proof, I do not believe, and I frankly feel that it's quite clear in my mind, that there is no showing here that rises to the level of entitling you to a hearing." On the basis of the defendant's offer of proof, the court concluded that the defendant had not "reached the threshold" with regard to either prong.

Giving every reasonable presumption in favor of the court's ruling, we find that the court's conclusion was reasonable in that the defendant had not made a prima facie showing with regard to either prong of the selec-

---

[7] In *St. German of Alaska Eastern Orthodox Catholic Church* v. *United States*, supra, 840 F.2d 1094–95, the United States Court of Appeals for the Second Circuit addressed a claim of discriminatory investigation rather than a claim of selective prosecution. The court, however, subjected the discriminatory investigation claim to the test for selective prosecution. Id., 1095.

tive prosecution test and as such was not entitled to a hearing. Even if we assume arguendo that everything in the defendant's offer of proof was true, it would not constitute a defense to the prosecution. Had he been afforded a hearing, nothing in his offer of proof indicated that he could have proven that he was "similarly situated" relative to the Meriden police officers in satisfaction of prong one or that his status as a nonpolice officer was an "impermissible consideration" in satisfaction of prong two. We agree with the court that "[w]hether or not the police are negligent as compared to whether or not there is selective prosecution, those are completely different criteria, two different criteria entirely . . . ." Although the defendant may have been prepared to prove that the officers were negligent in their pursuit of him, such a showing would have been wholly unrelated to whether there was selective prosecution.

The judgment is affirmed.

In this opinion the other judges concurred.