STATE OF CONNECTICUT *v.* TYRONE E. PAYNE
(AC 26782)

Flynn, C. J., and Schaller and Hennessy, Js.

14

Argued January 3—officially released March 13, 2007

*Sarah F. Summons*, special public defender, for the appellant (defendant).

*Joan K. Willin*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Christian M. Watson*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Tyrone E. Payne, appeals from the judgment of conviction, rendered after a jury trial, of identity theft in violation of General Statutes

§ 53a-129a, forgery in the second degree in violation of General Statutes § 53a-139 (a) (1), criminal attempt to commit larceny in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-123 (a) (1), and criminal impersonation in violation of General Statutes § 53a-130 (a) (1).[1] On appeal, the defendant claims that the court improperly (1) denied his motion for dismissal and request for an evidentiary hearing, which was based on his allegation of selective prosecution, and (2) allowed the state to introduce evidence of his prior bad acts. We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to our resolution of the defendant's appeal. The defendant, posing as his first cousin, Paul Payne, went to TK Auto Wholesalers, Ltd. (TK Auto), and attempted to finance the purchase of a 1995 Lincoln Mark VIII motor vehicle for a total purchase price of $9309.[2] Robert Neidermyer, a salesperson at TK Auto, assisted the defendant in completing the forms necessary to purchase and finance the vehicle. The defendant gave Neidermyer all of the requested information, including the name, address, place of employment, income, social security number, date of birth and driver's license number for Paul Payne. The defendant also presented Paul Payne's driver's license to Neidermyer, who made a photographic copy of it. During the transaction, Neidermyer

[1] On his appeal form, the defendant also indicated that he is appealing from a judgment of conviction for accessorial liability in violation of General Statutes § 53a-8. We are unable to discover any charge or conviction for accessorial liability, however, in the record. Accordingly, we assume that this is a typographical error. Additionally, we note that the defendant also had been charged with use of drug paraphernalia in violation of General Statutes § 21a-267 (a), but the state did not pursue that charge at trial.

[2] The defendant also alleged, both at his criminal trial and in a separate civil action, that the salesmen at TK Auto had taken and illegally retained his $1300 cash down payment. See *Payne* v. *TK Auto Wholesalers*, 98 Conn. App. 533, 911 A.2d 747 (2006).

left to assist his wife, and Michael Robson, TK Auto's general manager, finished completing the documentation with the defendant. The defendant stated that he was Paul Payne, and he signed the credit application using the name Paul Payne, although his true name was Tyrone Payne. The defendant also told Robson that he had not financed a vehicle previously.

Robson told the defendant that he would telephone him at the number he provided if his loan was approved. After running Paul Payne's credit report, however, Robson became concerned because the defendant had represented that he had not taken out a car loan previously, but Paul Payne's credit report showed that there previously had been a car loan, which had been paid in full and was "perfect." Robson then compared the signature on the driver's license with the signature on the paperwork and concluded that they did not match.

When Neidermyer returned to TK Auto after assisting his wife, Robson asked him if he had noticed anything strange about his transaction with the defendant, to which Neidermyer responded negatively. Robson then explained to Neidermyer that he did not think that the defendant's signature on the credit application matched the signature on the photographic copy of the license that the defendant had presented to the dealership. Neidermyer compared the documents but could not tell if they were the same.

Robson dialed the number that the defendant had provided on the vehicle purchase order and was told by the person answering the telephone that they never had heard of Paul Payne. Robson also telephoned directory assistance and, using the address that the defendant had provided on his application, obtained the telephone number for Paul Payne. Robson dialed the number he had obtained from directory assistance and left a message on an answering machine, stating that

he had a few more questions regarding the vehicle purchase. A very short time later, a man returned Robson's telephone call, identifying himself as the real Paul Payne. He explained that he was in Georgia, and he asked Robson to notify the police because he believed that his cousin was attempting to defraud him. Robson then telephoned the police.

Neidermyer was directed by the police to have the defendant return to TK Auto under the guise of filling out more paperwork in order to pick up the vehicle, and Neidermyer was instructed to telephone the police when the defendant was on his way to TK Auto. When the defendant telephoned the dealership to find out the status of his purchase, Neidermyer, as directed by the police, told the defendant that the vehicle was ready for pickup and that he needed to come in and fill out the remaining paperwork. After the defendant arrived at TK Auto, Neidermyer went through some paperwork with him and, following the instructions given by the police, then told the defendant that he needed to make copies of these papers. When Neidermyer left the room, the police approached the defendant and asked him to identify himself. The defendant stated that he was Paul Payne. The police then arrested him. At the time of his arrest, the defendant had in his possession Paul Payne's driver's license and birth certificate. He also had a department of correction inmate identification card bearing the name Paul Payne but containing a photograph of the defendant.[3]

---

[3] It appears from the record that the defendant had been convicted of certain crimes while using the identity of Paul Payne. On direct examination during the defendant's trial, Paul Payne testified that probation officers had visited his home, telling him that he was on probation for certain crimes that he knew he had not committed. Accordingly, he went to the police station in an effort to straighten this out, and, after checking Paul Payne's fingerprints, the police discovered that he was not the person who had been convicted of these crimes. Paul Payne then filled out a police report in which he explained that he believed he had been the victim of identity theft and that his cousin, the defendant, had been the probable perpetrator. The defendant, on cross-examination, also admitted that he had been arrested

The defendant was charged with and convicted of identity theft, forgery in the second degree, criminal attempt to commit larceny in the second degree and criminal impersonation. He was sentenced to a total effective sentence of six years incarceration, execution suspended after five years, with one year of intensive probation.[4] This appeal followed. Additional facts will be set forth where necessary.

## I

On appeal, the defendant first claims that the court improperly denied his motion to dismiss and request

in the past under the name of Paul Payne and that he had been issued the inmate identification card in the name of Paul Payne.

At sentencing, the prosecutor informed the court that he had run Paul Payne's "rap sheet," finding the following convictions and sentences: "Larceny in the third degree, two years suspended, three years probation; larceny in the third [degree], two years suspended, three years probation; possession of narcotics, unconditional discharge; kidnapping [in the second degree], twelve after eight, three years probation concurrent to a sexual assault in the third degree, five years to serve; and a probation violation, which he got an unspecified sentence and then did three years on the probation violation, and another five years on the sexual assault in the third degree; an unlawful restraint, he did eight months; and a failure to appear in the first degree, eight months; a robbery [in the first degree], eight years suspended after four, four years probation; probation violation, probation terminated; and a possession of narcotics, two years to serve."

The prosecutor also explained to the court: "[The real Paul Payne] is a gentleman that works for the United States Postal [Service] and is a hard working guy. And if he ever goes to advance in his job and they run a records check on Paul Payne, he is going to be in for the ride of his life. And Paul Payne is now responsible for the actions of his cousin [who] he helped out every day of his natural life. And the way that [the defendant] repays Paul is to go out and get another thing added to Paul's rap sheet. And to me that is the most deplorable thing. And that's my biggest problem with this case."

[4] As part of the defendant's intensive probation, the court ordered the defendant, inter alia, to "cooperate with law enforcement or submit yourself for fingerprints to help untangle your record from the victim's record. He actually doesn't have one. But in this case, restitution is not money; restitution is allowing him to have his record cleared. You have to cooperate with that." Additionally, the court ordered: "You are not to carry any identifying documents belonging to Paul Payne. You are not to seek to obtain any identifying information belonging to Paul Payne. You are not to pass yourself as Paul Payne. If you do . . . it will constitute a violation of probation."

for an evidentiary hearing, which was based on his allegation of selective prosecution. In support of this claim, the defendant argues that the court improperly denied his motion because he had set forth a prima facie case showing that (1) the salesmen at TK Auto were similarly situated, relative to him, but were not prosecuted, and (2) he was the victim of invidious discrimination on the basis of his "suspect classification" as a "converter of property." We are not persuaded.

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Perez*, 82 Conn. App. 100, 106, 842 A.2d 1187, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004).

In cases in which the defense of selective prosecution has been asserted, before a motion to dismiss can be granted, the defendant must prove "(1) that others similarly situated have generally not been prosecuted and that he has been singled out and (2) that he is the victim of invidious discrimination based on impermissible considerations such as race, religion, or the exercise of a constitutionally protected right." (Internal quotation marks omitted.) *State* v. *Delossantos*, 211 Conn. 258, 287–88, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); see also *United States* v. *Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

In relation to the court's denial of the defendant's request for an evidentiary hearing, however, we recently

had the opportunity to determine under what circumstances a defendant claiming selective prosecution is entitled to an evidentiary hearing. In *State* v. *Perez*, supra, 82 Conn. App. 100, we stated that "[w]e believe that [n]o evidentiary hearing . . . is required unless the [trial] court, in the exercise of its discretion, finds that the required prima facie showing has been made as to both elements of the [selective prosecution] test. . . . [Furthermore,] we [held] that an evidentiary hearing to prove selective prosecution is not a matter of right and is not available to every defendant, but rather is to be granted at the discretion of the trial court following a prima facie showing by the defendant that a legitimate claim exists with regard to both prongs of the selective prosecution test." (Citation omitted; internal quotation marks omitted.) Id., 110.

As the United States Court of Appeals for the Second Circuit has explained: "To warrant discovery [or an evidentiary hearing] with respect to a claim of selective prosecution, a defendant must present at least some evidence tending to show the existence of the essential elements of the defense . . . . Mere assertions and generalized proffers on information and belief are insufficient." (Citations omitted; internal quotation marks omitted.) *United States* v. *Fares*, 978 F.2d 52, 59 (2d Cir. 1992). "[T]o engage in a collateral inquiry respecting prosecutorial motive, there must be more than mere suspicion or surmise. If a judicial inquiry into the government's motive for prosecuting could be launched without an adequate factual showing of impropriety, it would lead far too frequently to judicial intrusion on the power of the executive branch to make prosecutorial decisions. Unwarranted judicial inquiries would also undermine the strong public policy that resolution of criminal cases not be unduly delayed by litigation over collateral matters." *United States* v. *Ross*, 719 F.2d 615, 619 (2d Cir. 1983). When a request for an evidentiary

hearing and a motion to dismiss on the basis of a defense of selective prosecution are rooted in mere "speculative and unduly myopic" assertions, a trial court does not abuse its discretion in denying an evidentiary hearing and motion to dismiss. *United States* v. *Fares*, supra, 60; see also *State* v. *Bunker*, 89 Conn. App. 605, 628, 874 A.2d 301 (2005) (offer of proof should contain specific evidence rather than vague assertions and sheer speculation), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006). Furthermore, because the amount of evidence needed to support a selective prosecution claim on the merits is greater than that which justifies an evidentiary hearing, it necessarily follows that, when an evidentiary hearing is not warranted, a defendant's merits claim must also fail. See generally *United States* v. *Alameh*, 341 F.3d 167, 175 (2d Cir. 2003).

The following additional history is relevant to our resolution of the defendant's claim on appeal. On November 30, 2004, the defendant's attorney filed a motion to dismiss the charges against the defendant on the ground of selective prosecution. It appears from the docket sheet that this motion was denied on March 7, 2005. On March 11, 2005, following the jury's guilty verdict, counsel presented an oral motion to dismiss on the ground of selective prosecution, and the court allowed some argument on the motion to be presented. Because there was confusion over whether a written motion properly had been filed with an offer of proof,[5] the court stated that it would hold the motion in abeyance and allow argument at the time of sentencing. On

---

[5] "Offers of proof are allegations by the attorney [or pro se party] in which he represents to the court that he could prove them if granted an evidentiary hearing. . . . The purpose of an offer of proof has been well established by our courts. First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial judge of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review." (Citation omitted; internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 19–20, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

May 5, 2005, the defendant, acting pro se, filed a new motion to dismiss and request for an evidentiary hearing on the ground of selective prosecution, along with a document entitled "offer of proof in support of motion to dismiss."

In this motion, the defendant asserted that the court lacked subject matter jurisdiction because "1. There is prima facie evidence salesmen [at TK Auto] and defendant were similarly situated for charges given defendant, but the law was only enforced against defendant in abuse of state's discretion. 2. There is prima facie evidence the state enforced the law only against defendant, as an invidious discrimination based on his constitutionally protected property right as a converter, as opposed to a subsequent converter, regarding $1,300 salesmen [withheld] under contract; knowing defendant would use it to prove salesmen should have been prosecuted under General Statutes § 53a-124 (a) (2), in addition to charges given defendant."

The defendant's written offer of proof, in relevant part, consisted of the following allegations: "On February 7, 2003, at Plainville's TK Auto, [the] defendant presented salesmen Michael Robson and Robert W. Neidermyer, a Connecticut driver's license in name and actual photo of Paul Payne. [The] defendant requested [a] purchase order and credit application from these salesmen. Withstanding fact that [the] defendant looks nothing like [the] photo on the license, however, these salesmen required [the] defendant to pay $1,300 on a $9,309 purchase price for [a] 1995 Lincoln Mark VIII. [The] defendant accepted, then gave salesman Robson $1,300 in cash. Salesman Neidermyer then filled out [a] purchase order in Paul's name, knowing it was not [the] defendant and recorded that [there] was in fact a 'deposit submitted with [the] order.' . . . Salesman Neidermyer also filled out [a] credit application in Paul's name, knowing it was not [the defendant] and recorded

[that] the $1,300 was in fact cash down. [The] defendant signed [the] name of Paul Payne at [the] bottom [of the] credit application. . . . Neidermyer then submitted [the] credit application in Paul's name to Preferred Auto Financing, knowing it was not [the] defendant . . . Salesman Robson then got cold feet, managed to reach Paul via phone, [got] Paul's permission to call police, and cancelled the credit application in Paul's name. The matter ended when [the] defendant phoned salesman Neidermyer, was misinformed the credit remained approved, and returned to TK Auto, where [the] defendant was immediately placed in custody via police. . . . Upon the arrest, however, both salesmen denied [receiving] any of [the] defendant's $1,300. Yet withstanding purchase order and credit application that states otherwise, the state, upon [the] defendant's arraignment, and at least in part 'because of' its adverse effect upon defendant's property rights over salesmen's subsequent conversion of the $1,300 under contract, proceeded to prosecute [the] defendant with no prosecution of salesmen Robson [or] Neidermyer at all."

Before the defendant was sentenced, the court allowed argument on the defendant's motion to dismiss and request for an evidentiary hearing, at which time the defendant and his counsel argued the merits of the motion, basically asserting the same allegations as set forth in his written offer of proof. The court, accepting the facts as alleged by the defendant for purposes of the motion only, specifically found that the defendant had failed to meet either prong of the selective prosecution defense and, therefore, had failed to set forth a prima facie case of selective prosecution.

Reviewing the court's ruling denying the defendant's motion, we conclude that the court's decision was legally and logically correct because the defendant had not made a prima facie showing with regard to either prong of the selective prosecution test, and, as such, he

was not entitled to an evidentiary hearing or a dismissal. Even if we were to assume that all of the allegations in the defendant's offer of proof were true, they would not constitute a valid defense to the defendant's prosecution for the charged crimes.[6] From the record, we conclude that the court reasonably found that the defendant was not similarly situated to the salesmen and that the prosecution was not prompted by invidious discrimination.

Had the court afforded the defendant an evidentiary hearing, we further conclude that there is nothing contained in his offer of proof that indicates that he could have proven that he was "similarly situated," relative to the TK Auto salesmen, in satisfaction of the first prong of the selective prosecution test. Even if his allegations that the salesmen improperly retained his alleged cash deposit and knew that he was not Paul Payne were true, these salesmen would not have been "persons situated similarly in all *relevant* aspects"; (emphasis in original; internal quotation marks omitted) *Thomas* v. *West Haven*, 249 Conn. 385, 402, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); because they did not commit the same offenses for which the defendant was tried and convicted, nor was their conduct the same as the defendant's. Even in the defendant's offer of proof, he

---

[6] In his offer of proof, the defendant alleged in relevant part that he and the salesmen were similarly situated because "arguendo, [the] salesmen and [the defendant] were violating the law by filling out and signing [the] purchase order and [the] credit application in another's name, knowing it was not [the] defendant's, and [the] salesmen are not immune from criminal liability, because their cancellation of the credit application was not a true renunciation of their conspiracy and attempted crime. . . . Although the state has broad discretion in deciding what crime(s) to charge in [a] particular situation . . . these compelling reasons . . . show the state had indeed abused its discretion. [These] salesmen not only attempted [a] crime against Paul Payne, but actually committed one against [the] defendant that involved [the] defendant's property rights. Prong one to the test for selective prosecution is satisfied."

did not claim that he could prove that these salesmen had stolen Paul Payne's identity in violation of § 53a-129a, that they had committed second degree forgery in violation of § 53a-139 (a) (1), that they had committed second degree larceny in violation of § 53a-123 (a) (1) by attempting to steal a motor vehicle valued at more than $5000 or that they had engaged in criminal impersonation in violation of § 53a-130 (a) (1). Rather, he alleged that they had stolen his $1300 deposit and that they had known he was not Paul Payne. Even if one were to assume that the allegations were true, they simply do not meet the threshold of "situated similarly in all *relevant* aspects . . . ." (Emphasis in original; internal quotation marks omitted.) Id.

Moreover, there is nothing in the defendant's offer of proof that indicates that he could have proven that his claimed "suspect classification" as a "converter of property" was an impermissible consideration for prosecution, which would be necessary to satisfy prong two of the selective prosecution test.[7] See *State* v. *Delossantos*, supra, 211 Conn. 287–88. "[A]bsent a showing of a selection deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification . . . conscious selectivity in enforcement of the

[7] As to the second prong of the selective prosecution test, the defendant asserted that the state's decision to prosecute him and not the salesmen was evidence of "invidious discrimination based on his constitutionally protected property right as a converter, as opposed to a subsequent converter, regarding $1,300 salesmen withheld under contract; knowing [that the] defendant would use it to prove salesmen should have been prosecuted under General Statutes § 53a-124 (a) (2), in addition to charges given [to the] defendant." The defendant further asserted that because "the salesmen were not prosecuted, it must be inferred [that] the state prosecuted [the] defendant, at least in part, because of [the] adverse effect [it would have] on his suspect classification as a converter of property, [with] superior possessory interest to claim [such property] under General Statutes § 53a-124 (a) (2). That adverse effect being: the disadvantage the state's most serious count (attempt larceny, second degree) placed on [the] defendant's ability to claim any superior possessory interest at all. An essential element in proving or disproving any claim of larceny. Prong two for the test of selective prosecution is satisfied."

law is not in itself a constitutional violation." (Internal quotation marks omitted.) *State* v. *Angel C.*, 245 Conn. 93, 127, 715 A.2d 652 (1998). We simply cannot agree with the defendant that he has some constitutionally protected right to convert another's property and that he improperly and unconstitutionally was singled out on the basis of his exercise of that right. Accordingly, the court properly denied the defendant's motion to dismiss and request for an evidentiary hearing.

## II

The defendant next claims that the court improperly allowed the state to introduce evidence of his prior bad acts. Specifically, the defendant argues that on cross-examination, the prosecutor questioned him about his being stopped while on foot by the Hartford police. Defense counsel objected to the question, but the court stated that it would be allowed with a limiting instruction. The court then gave a limiting instruction. The state argues that it is not clear that this constituted evidence of prior bad acts, but, even if it did, the evidence was relevant and probative of the defendant's motive, intent and common scheme. We conclude that this claim lacks merit.

"Connecticut Code of Evidence § 4-5 (b) makes evidence of uncharged misconduct admissible if it is so connected with the charged misconduct to be relevant to intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, an element of the crime or corroboration of crucial testimony. See also C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.2, pp. 232–33." *State* v. *Smith*, 88 Conn. App. 275, 285, 869 A.2d 258, cert. denied, 273 Conn. 940, 875 A.2d 45 (2005). "The rules governing the admissibility of evidence of a criminal defendant's prior misconduct are well established. Although evidence of prior unconnected crimes

is inadmissible to demonstrate the defendant's bad character or to suggest that the defendant has a propensity for criminal behavior . . . such evidence may be admissible for other purposes . . . if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency. . . . [Simply because] evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material . . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 794–95, 911 A.2d 1099 (2007).

The defendant challenges, as improperly allowed evidence of prior bad acts, the following colloquy:

"[The Prosecutor]: December 29, 2002, the Hartford police stopped you . . . after you ran away from a car?

"[The Defendant]: No.

"[Defense Counsel]: Objection. That goes to specifics of prior bad acts.

"[The Prosecutor]: I will proffer that it goes to the specific reason of [the defendant] using somebody else's identification in clarifying himself and making himself stand out to be someone that he's not—it, number one, shows a motive. It shows an intent. It shows a common scheme or plan.

"The Court: I'll allow it with a cautionary instruction.

"[The Prosecutor]: Do you remember being stopped on that day, December 29 of 2002, by the Hartford police?"

Before the defendant could answer again, the court gave a limiting instruction on the use of such testimony and cautioned the jury that this evidence could not be used to show that the defendant was a "bad guy" or that he had a "criminal tendency," but, rather, that it could be used to establish "intent, motive or . . . common scheme . . . ." Despite the court's ruling allowing this evidence with a limiting instruction, the prosecutor ceased that line of questioning and began to ask the defendant about a letter he had written to Paul Payne. No further questions regarding the stop on December 29, 2002, were attempted by the state.

On appeal, the defendant claims that the "trial court committed reversible error by admitting evidence of prior uncharged misconduct as to the [defendant], which unfairly and substantially prejudiced the defendant in the instant charges." In his brief, the defendant refers only to the two questions asked by the prosecutor concerning the stop by the police on December 29, 2002.[8] The defendant, however, answered that question negatively the first time it was asked, and he did not answer it the second time it was asked. The prosecutor made no mention of why the defendant was stopped by the police on that date or whether the defendant had been engaging in criminal activity at the time. It is unclear from our reading of the record exactly why the defendant was stopped on that date or what occurred after the stop.[9] Even if the state initially had sought to introduce evidence of some "bad acts" related to this police stop, it did not elicit such testimony or make

[8] Although other evidence of prior bad acts was admitted during the defendant's trial, the defendant raises only a claim regarding the questioning related to the December 29, 2002 police stop.

[9] In its brief, the state submits that "[a]lthough it is not entirely clear from the record, apparently the Hartford police stopped the defendant on December 29, 2002, in connection with their investigation of Paul Payne's complaint that someone, possibly the defendant, had withdrawn $3000 from his bank account."

any representations that the defendant had engaged in anything improper relating to this stop. Further, the defendant denied having been stopped. Accordingly, we fail to see how these questions resulted in evidence of prior bad acts or how they were prejudicial to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.